WAGNER CHOI & VERBRUGGE

CHUCK C. CHOI
ALLISON A. ITO
745 Fort Street, Suite 1900
Honolulu, Hawaii 96813
Telephone: (808) 533-1877
Facsimile: (808) 566-6900
cchoi@hibklaw.com
aito@hibklaw.com

Proposed Attorneys for JOHN DEHART WOLLSTEIN,
Debtor and Debtor-in-Possession

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re:<br><br>JOHN DEHART WOLLSTEIN,<br><br>      Debtor and<br>      Debtor-in-Possession | Case No. 11-00098<br>(Chapter 11)<br><br>Judge: Hon. Robert J. Faris |

## DEBTOR'S SUBMISSION OF FIRST AMENDED DISCLOSURE STATEMENT DATED AS OF NOVEMBER 18, 2011

John Dehart Wollstein, debtor and debtor-in-possession ("Debtor"), by and through his undersigned counsel, hereby submits, as Exhibit A, a redline of the Debtor's Disclosure Statement for Chapter 11 Plan of Reorganization dated as of November 18, 2011 compared to his Disclosure Statement for Chapter 11 Plan of Reorganization dated September 30, 2011.

67806

DATED:  Honolulu, Hawaii, November 18, 2011.


/s/ Chuck C. Choi
CHUCK C. CHOI
ALLISON A. ITO
Attorneys for Debtor and
Debtor-in-Possession

67806

U.S. Bankruptcy Court - Hawaii   #11-00098   Dkt # 254   Filed  11/18/11   Page 2 of 77

# EXHIBIT A

WAGNER CHOI & VERBRUGGE
Attorneys at Law

CHUCK C. CHOI
ALLISON A. ITO
745 Fort Street, Suite 1900
Honolulu, Hawaii 96813
Telephone: (808) 533-1877
Fax: (808) 566-6900
Email: cchoi@hibklaw.com
       aito@hibklaw.com

Attorneys for Debtor
and Debtor-in-Possession

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>John DeHart Wollstein<br><br>    Debtor and<br>    Debtor-in-possession | Case No. 11-00098<br><br>(Chapter 11)<br><br>Judge: Hon. Robert J. Faris |

**DISCLOSURE STATEMENT FOR DEBTOR'S
PLAN OF REORGANIZATION DATED SEPTEMBER 30, NOVEMBER 18,
2011**

# I.    INTRODUCTION

On January 14, 2011, JOHN DeHART WOLLSTEIN (the "Debtor"), filed his Plan (the "Plan"). The Debtor submits this Disclosure Statement pursuant to Bankruptcy Code section 1125 for the purpose of soliciting acceptances of the Plan, a copy of which is attached hereto as Exhibit A. The Bankruptcy Court has determined that this Disclosure Statement contains "adequate information" within the meaning of section 1125 of the Bankruptcy Code and has authorized the Debtor to transmit it to holders of impaired Claims in connection with the solicitation of votes with respect to the Plan. Unless otherwise defined herein, all capitalized terms contained herein shall have the meanings given to them in the Plan. As described more fully elsewhere in this document, the Debtor believe that the Plan provides the greatest and earliest possible recoveries to holders of Claims, that acceptance of the Plan is in the best interests of all parties, and that any alternative would result in further delay, uncertainty, expense, and ultimately, smaller distributions to holders of Allowed Claims.

## A.    The Purpose Of This Disclosure Statement

The Bankruptcy Code generally requires that the proponent(s) of a plan of reorganization prepare and file with the Bankruptcy Court a "disclosure statement" that provides information of a kind, and in sufficient detail, that would enable a typical holder of claims in a class impaired under that plan to make an informed

U.S. Bankruptcy Court - Hawaii   #11-00098   Dkt # 254   Filed  11/18/11   Page 5 of 77

judgment with respect to the plan.  This Disclosure Statement provides such information, as well as information regarding the deadlines for casting ballots with respect to the Plan, the deadlines for objecting to confirmation of the Plan, the requirements that must be satisfied in order for the Bankruptcy Court to confirm the Plan, and other relevant information.  Parties in interest should read this Disclosure Statement, the Plan, and all of the accompanying exhibits in their entirety in order to ascertain:

1.  How the Plan will affect their Claims against the Debtor;

2.  Their rights with respect to voting for or against the Plan;

3.  Their rights with respect to objecting to confirmation of the Plan; and

4.  How and when to cast a ballot with respect to the Plan.

The Disclosure Statement, however, cannot and does not provide holders of Claims with legal or other advice, or inform such parties of all aspects of their rights.  Claimants are advised to consult with their lawyers and/or financial advisors to obtain specific advice regarding how the Plan will affect them and regarding their best course of action with respect to the Plan.

The Disclosure Statement has been prepared by the Debtor in good faith and in compliance with applicable provisions of the Bankruptcy Code.  Based upon information currently available, the Debtor believes that the information contained in this Disclosure Statement is correct as of the date of its filing.  The Disclosure

U.S. Bankruptcy Court - Hawaii   #11-00998   Dkt # 254   Filed  11/18/11   Page 6 of 77

Statement, however, does not and will not reflect events that occur on or after ~~August 22,~~ December 18, 2011 (and certain earlier dates where indicated herein), and the Debtor assumes no duty and presently does not intend to prepare or distribute any amendments or supplements to reflect such events.

### B.     Summary Of Entities Entitled To Vote On The Plan And Of Certain Requirements

Only holders of Allowed Claims in Classes 3F, 11A, 12-15 (collectively the "Voting Classes"), are entitled to vote on the Plan because such Classes are: (i) impaired under the Plan within the meaning of section 1124 of the Bankruptcy Code; and (ii) may receive distributions of property under the Plan and therefore are not deemed to have rejected the Plan under Section 1126(g) of the Bankruptcy Code.

The Bankruptcy Court may confirm the Plan only if at least one Class of impaired Claims has voted to accept the Plan (without counting the votes of any insiders whose Claims are classified within that Class) and if certain statutory requirements are met as to both non-consenting members within a consenting Class and as to dissenting Classes.  A Class of Claims has accepted the Plan only when at least one-half in number and at least two-thirds in amount of the Allowed Claims actually voting in that Class vote in favor of the Plan.

In the event of a rejection of the Plan by one or more Voting Classes, the Debtor intends to request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code, which permits confirmation notwithstanding such rejection if the Bankruptcy Court finds that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to the rejecting Classes.

C.    **Voting Procedures, Balloting Deadline, Confirmation Hearing, And Other Important Dates, Deadlines And Procedures**

1.    **Voting Procedures And Deadlines**

The Debtor has provided copies of this Disclosure Statement and ballots (which include detailed voting instructions) to all known holders of impaired Claims in the Voting Classes.  Those holders of an Allowed Claim in a Voting Class who seek to vote to accept or reject the Plan must complete the enclosed ballot and return it in the enclosed envelope to Wagner Choi & Verbrugge at 745 Fort Street, Suite 1900, Honolulu, HI 96813 (the "Ballot Tabulator"), so that it actually is received by no later than the Balloting Deadline (as defined below). Ballots do not constitute proofs of Claim and must not be returned directly to the Debtor, or the Bankruptcy Court.  Readers are encouraged to read and review their ballots carefully.

U.S. Bankruptcy Court - Hawaii   #11-00998   Dkt # 254   Filed  11/18/11   Page 8 of 77

All ballots must be completed, signed, returned to, and actually received by the Ballot Tabulator by not later than _____, 2012, at 4:00 p.m. Hawaiian Standard Time (the "Balloting Deadline"). Ballots received after the Balloting Deadline, and ballots returned directly to the Debtor, the Bankruptcy Court, or any entity other than the Ballot Tabulator, will not be counted in connection with confirmation of the Plan.

### 2. Date Of The Confirmation Hearing And Deadlines For Objection To Confirmation Of The Plan

The hearing to determine whether the Bankruptcy Court will confirm the Plan (the "Confirmation Hearing") will commence on ~~_____~~,March 12, 2012 in the Courtroom of the Honorable Robert J. Faris, United States Bankruptcy Judge for the District of Hawaii located at 1132 Bishop Street, Suite 250, Honolulu, Hawaii 96813. The Confirmation Hearing may be continued from time to time by announcement in open Court without further notice.

Any objections to confirmation of the Plan must be filed with the Bankruptcy Court and served by no later than _____, 2012 on the Debtor's counsel. Objections that are not timely filed and served may not be considered by the Bankruptcy Court. Please refer to the accompanying notice of

6

the Confirmation Hearing for specific requirements regarding the form and nature of objections to confirmation of the Plan.

###### D. Important Notice And Cautionary Statement

The liquidation analysis, estimates, and other financial information referenced in this Disclosure Statement or attached hereto as exhibits have been developed by the Debtor with the assistance of professional advisors who have not independently verified such information and, accordingly, make no representations as to its accuracy. Moreover, although reasonable efforts have been made to provide accurate information, the Debtor cannot warrant or represent that the information in this Disclosure Statement, including any and all financial information, is without inaccuracy or omissions, or that actual values or distributions will comport with the estimates set forth herein.

No entity may rely upon the Plan or this Disclosure Statement or any of the accompanying exhibits for any purpose other than to determine whether to vote in favor of or against the Plan. Nothing contained in such documents constitutes an admission of any fact or liability by any party, and no such information will be admissible in any proceeding involving the Debtor, or any other person, nor will this Disclosure Statement be deemed evidence of the tax or other legal effects of the Plan on holders of Claims in the Bankruptcy Case.

U.S. Bankruptcy Court - Hawaii   #11-00098   Dkt # 254   Filed 11/18/11   Page 10 of 77

### E.      Additional Information

If you have any questions about the procedures for voting on the Plan, desire another copy of a ballot, or seek further information about the timing and deadlines with respect to confirmation of the Plan, please write to the Ballot Tabulator at the address set forth above. The Ballot Tabulator, however, cannot and will not provide holders of Claims with any advice, including advice regarding how to vote on the Plan or the legal effect that confirmation of the Plan will have upon Claims against or Interests in the Debtor.

## II.      BACKGROUND INFORMATION

### A.      The Debtor's Prepetition Business And Operations

The Debtor was born in 1935 in Rome, Georgia. He moved to Hawaii in 1967, and has settled here. The Debtor holds a Ph.D. in education from the University of Hawaii. He worked for the State of Hawaii Department of Education ("DOE") for twenty-five (25) years. At the time the Debtor left the DOE in 1991, he was the Educational Specialist for the foreign language program for the entire State of Hawaii, a position he held for about 15 years.

The Debtor has been separated from his wife since 2004, and there is no realistic likelihood of reconciliation. He currently provides for his 15 year old daughter and step son, who both reside with him.

The Debtor purchased his first investment property in Hawaii in 1968. Since then, Debtor has invested in various properties and sold properties as an investment strategy often on Agreements of Sale. The Debtor regularly entered into Agreements of Sale whereby he purchased or sold interests in certain properties, on condition that the monthly payments by the "buyer" was adequate to allow the "seller" to make debt service payments on the property. Over the course of several decades the Debtor built up a large portfolio of properties.

**B.     The Debtor's Financial Difficulties And The Events Precipitating The Debtor's Chapter 11 Filing**

The Debtor generates income by renting properties out to unrelated third parties, which rental income generally covered the monthly mortgage payments and related property expenses. Until approximately 2009, the Debtor was able to service the dozens of mortgages on his various investment properties from rents and interest payments received from buyers under Agreements of Sale.

However, as a result of the downward turn in the economy starting in 2008, the Debtor experienced a series of financial challenges. Refinancing or modifying existing loans with institutional lenders became more difficult. The property rental market also suffered a decline in general and certain of the Debtor's tenants defaulted on their obligations. The Debtor also experienced vacancies at certain of his higher rental properties. As a result, the Debtor suffered cash flow problems which led to his defaulting on several mortgages.

The Debtor filed his voluntary bankruptcy petition on January 14, 2011 to stop a non-judicial foreclosure commenced by PNC Bank on the Debtor's interest in Penthouse 501 at the Hawaiian Monarch, located at 444 Niu Street.

C.     **Properties Owned by the Debtor**

The Debtor owns, directly or indirectly, approximately 57 properties located in Hawaii, Texas and in Georgia.  The 30 Ebbtide Units make up the majority of these holdings.  The Debtor is the sole member of the following Hawaii-registered limited liability companies: Wollstein Big Island Properties LLC, Wollstein Hawaiian Ebbtide Rentals LLC, Wollstein Oahu Properties LLC, and Wollstein Rosalei Rentals LLC.  These entities own all or most of the Debtor's interest in his properties located on the island of Hawaii, the Ebbtide Units, and the Waikiki Rosalei Condominium, located at 445 Kaiolu Street, Honolulu, Hawaii 96815 .

The properties owned by the Debtor which are encumbered by mortgages are identified in the Plan.  These properties and the treatment of mortgagees are described below at section III.C. In addition, the Plan identifies certain properties subject to pending Agreements of Sale under which the Debtor is the seller and which the Debtor intends to assume.

The Debtor directly or indirectly also owns certain properties free and clear of any liens or encumbrances.  They consist of (a) the 2830 Ebbtide Units located at 159 Kaiulani Avenue, Honolulu, Hawaii 96815, (b) the three Big Island

~~Properties, (c)~~ ) a one-third interest in Unit 1803 at the Waikiki Skyliner, located at 2415 Ala Wai Boulevard, Honolulu, Hawaii 96815, (~~d~~c) Unit # 306A  at the Kalia Condominium, 425 Ena Road, Honolulu, Hawaii ~~96815,~~96815 (the "Kalia Unit"), (e) a property located at the corner of Lake Short Drive and Mitchell Circle  in Rome, Georgia 30161, and (~~f~~d) 1727 S. Beretania Street, B Hale #2C, Honolulu, Hawaii 96814, which is subject to a pending Agreement of Sale to be completed with Kiyoko Leary.

### D.   Liquidation of Properties and Expected Proceeds.

The ~~Debtor also owns real estate located at 1018 W. Missouri Street, El Paso Texas.  On August 11, 2011, the Debtor filed a motion to approve transfer of title of the El Paso property.  The initial hearing on the motion was scheduled for September 19, 2011.  The hearing was continued to October 17, 2011 due to, amongst other things, substitution of new counsel to the Debtor.  On September 30, 2011, creditor Timothy Prickett filed an objection to the motion to approve the transfer of title of the El Paso property.~~Plan contemplates the sale of all of the unencumbered properties, including the Ebbtide Units and one of the Georgia Properties.   Two of the Debtor's properties were put on the market in November, 2011.  They are: (a) the Kalia Unit, which is owned by Wollstein Oahu Properties LLC, a non-debtor entity, and currently listed for sale for $139,000; and (b) unit 1207 at the Kuhio Village, located at 2450 Prince Edward Street, which is

encumbered by a mortgage in the amount of $80,000 and is isted for sale at $175,000.  The Debtor expects net proceeds of between $150,000 to $200,000 from these sales by early 2012.

The ~~properties at are Ebbtide Units and are leasehold properties. Because all are located in the same building, it would not be in Debtor's best economical interest to list and sell the properties all at the same time. Therefore, with respect to the properties that Debtor intends to liquidate, the Debtor intends to sell the first floor commercial Ebbtide units first, then the fourth floor Ebbtide units, followed by the third floor Ebbtide units, and finally the second floor Ebbtide units.~~

~~The non-commercial units at Ebbtide units can be sold off quickly, particularly given that the market rent appears to be $1,200 per month, which barely covers ground rent and dues.~~

~~The sale of said properties will be staggered in order to maximize the net proceeds. Debtor will obtain a realtor to assist with the sale of the units. All of the sales proceeds will be deposited into the Liquidation Fund and used to pay his unsecured creditors.~~ Debtor estimates that sales proceeds of  between $300,000 to $350,000 will be necessary for the Plan can go effective as follows: (a) approximately $100,000 to 150,000 to pay administrative claims; (b)

approximately $100,000 for mortgage cures; and (c) the $100,000 initial deposit into the Liquidation Fund.

The Plan will become "effective" upon the satisfaction of certain conditions, including the initial deposit into the Liquidation Fund. The Plan provides that the Liquidation Fund must be funded no later than six months after the date the Court confirms a Plan. The Debtor anticipates the Plan will be confirmed in March of 2012 and that the Liquidation Fund will be funded before the fourth quarter of 2012.

As for the Debtor's encumbered properties, the Plan provides for the sale of substantially all of them as necessary to fund the Plan except the following:

(i) 445 Kaiolu Street, # 303, Class 1A (to complete a post-petition Rent to Own Agreement with John and Monica Kumalae);

(ii) 445 Kaiolu Street, # 505, Class 1B (to complete a post-petitionnd Agreement of Sale with Mariolito Asuncion and Filipana Sablan);

(iii) 445 Kaiolu Street, # 604 , Class 1C (to complete a pre-petition Agreement of Sale with Michael Faria who owns half of the property);

(iv) 444 Niu Street, Apt. No. PH-502, Class 2B

(v) 2421 Ala Wai Boulevard, # 703,  Class 2C (to complete a pre-petition Agreement of Sale with Melvin Kam Hoon Wong and Laverne Kum Chin Wong);

(vi) 55-145 Poohaili Street, Class 3E (to complete a pre-petition Agreement of Sale with Berlin Kaio);

(vii) 444 Niu Street, Apt. No. PH-501, Class 6; and

(vii) 91-449 Ewa Beach Road, Class 8.

With regard to these properties, all of the mortgagtes are current except the mortgages on the two Nius Street units.

E. ~~D.~~ Events ~~Following The~~During Chapter 11 Filing.

1. **Pro Se Filing and Employment of Counsel.**

The Debtor was initially unrepresented in this bankruptcy proceeding. However, on March 3, 2011, the Court entered an order authorizing the Debtor's application to employ the law firm of Kessner Umebayashi Bain & Matsunaga ("KUBM") to represent the Debtor in his bankruptcy case *nunc pro tunc* to February 11, 2011. The Court authorized KUBM to receive a $10,000 post-petition retainer.

On August 15, 2011, KUBM filed a motion to withdraw its representation of the Debtor and on August 23, 2011, an order authorizing KUBM's motion to withdraw as counsel.

On September 21, 2011, the Court subsequently authorized the Debtor to be represented by Bruce Wakuzawa effective as of September 6, 2011 and permitted the Debtor to pay Mr. Wakuzawa, and Mr. Wakuzawa to hold subject to further

court order in his client trust, a $10,000 retainer provided that the estate has sufficient unencumbered funds to pay the retainer and all existing and reasonably anticipated future administrative claims.

On September 23, 2011, the Debtor filed an application to employ Wagner Choi & Verbrugge as bankruptcy counsel, effective as of September 17, 2011. ~~The Debtor intends for~~ Wagner Choi & Verbrugge ~~to substitute~~has substituted in as bankruptcy counsel for Mr. Wakazuwa.

## 2. Sale of Property

On April 11, 2011, the Debtor filed a Motion to Approve Sale of Real Property, seeking to sell his leasehold interest in real property located at 2145 Ala Wai Boulevard, # 1808, Honolulu, Hawaii 96815 to Antone and Janet Mindoro for $280,000. The order approving the sale was entered on April 25, 2011, as Docket # 62. The sale was consummated on or about May 20, 2011 and the Debtor's former counsel, KUBM is holding net sale proceeds of approximately $115,787. KUBM will turn over to the Debtor and Wagner Choi & Verbrugge, the net sum of $60,079.37, net of KUBM's fees and expenses.

## 3. U.S. Trustee Motion

On January 31, 2011, the Office of the United States Trustee ("UST") filed a motion to dismiss this case. The UST withdrew this motion when the Debtor employed KUBM as bankruptcy counsel.

On April 21, 2011, the Court set a deadline for the filing of a disclosure statement and reorganization plan for July 15, 2011.  On July 13, 2011, the Court approved a stipulation to extend that deadline to August 15, 2011.  However, because the Debtor failed to do so, on August 17, 2011, the UST filed a motion to convert the Debtor's case to a chapter 7 liquidation or alternatively, to dismiss the case.  On September 20, 2011, the Court entered an order requiring the Debtor to file by September 30, 2011 a disclosure statement and reorganization plan and set the disclosure statement for hearing.  The order also provides that the Court would appoint a Chapter 11 Trustee if the Debtor did not comply.  The hearing on the UST's motion has been continued to track the hearing on the Disclosure Statement.

**F.      E. Financial Condition Of Debtor.**

As of September 28, 2011, the Debtor is holding cash of approximately $7,332.42.   The Debtor's monthly cash flow totals approximately $96,000, the majority of which is from Ebbtide Units rental income.  The Debtor also receives approximately $5,000 per month in interest payments from buyers under Agreements of Sale.  Debt service, lease rent (primarily for the Ebbtide Units), maintenance fees and other expenses currently total approximately $132,000 per month.  Thus the Debtor is currently cash flowing on a negative basis.  However, the Debtor anticipates the sale of multiple encumbered properties will result in: (a) lower debt service; and (b) the accumulation of cash necessary to fund the Plan.

**G.** ~~F.~~ **Status of Unsecured Claims.**

The last day for creditors to file pre-petition unsecured claims against the Debtor was fixed by the Court as May 23, 2011. Approximately $133,176.49 dollars in total unsecured claims have been filed against the Debtor, excluding the unsecured claim of Mary Simpson in the amount of $1,000,000 purportedly arising from a 2006 lawsuit filed by Simpson against the Debtor and the Waikiki Ebbtide board. However, the Debtor believes that ~~the~~ Simpson's Claim is invalid. The Debtor will commence an adversary/contested proceeding within 180 days of the Effective Date of the Plan challenging the validity of ~~the~~ Simpson's Claim. The Debtor also reserves his right to an order estimating the amount of the claim. In addition, the Debtor has filed a suit post-petition in the Honolulu District Court seeking to evict Simpson from certain units at the Ebbtide for non-payment of rent. Simpson has filed a counter-claim in that action.

The Debtor is in the process of reviewing each of the claims filed and will file objections to those claims it believes to be inappropriate. The final amount of unsecured claims that will be allowed will be determined by the Court's ruling on the Debtor's objections to claims.

### III. SUMMARY OF THE PLAN

In summary, the Plan provides for distributing the liquidation value of the Debtor's assets to creditors. The various provisions of the Plan are designed to

comply with the requirements of the Bankruptcy Code and provide for the distributions to creditors with the minimum of additional administrative expense.

A.  **Classification and Treatment of Claims**

The Plan provides for the treatment of 31 Classes of Claims.  The treatment of Claims described below applies only to Allowed Claims.  Claims that are the subject of a pending objection before the Bankruptcy Court or other pending litigation, or that have not been allowed pursuant to a Final Order of the Bankruptcy Court or a stipulation consented to by the Debtor, and the claimant, will receive distributions under the Plan only if and after they become Allowed Claims.  The Reorganized Debtor retains the right to initiate proceedings to subordinate or otherwise object to Claims.

B.  **Unclassified Claims.**

In addition to the Claims that are placed in the Classes described below, certain claims are not classified because the treatment of those claims is specified by the Bankruptcy Code.  These unclassified claims consist of Administrative expenses (i.e. the costs and expenses incurred during the chapter 11 case) and Priority Tax Claims.  These creditors are not entitled to vote.

1.  **Administrative Claims.**

Administrative Claims are include any Claim under sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and

U.S. Bankruptcy Court - Hawaii   #11-00008   Dkt # 254   Filed  11/18/11   Page 21 of 77

necessary expenses of preserving the estate of the Debtor, any actual and necessary expenses of operating the business of the Debtor, all compensation and reimbursement of expenses allowed by the Bankruptcy Court under section 330 of the Bankruptcy Code, and any fees or charges assessed against the estate of the Debtor under section 1930 of title 28 of the United States Code. These claims will be paid in full in cash under the Plan on the later of the Effective Date of the Plan or the date on which such claims are allowed by the Court. The Debtor estimates that, as of the Confirmation Hearing, there will be approximately $150,000 remaining in unpaid Administrative Claims consisting primarily of Professional Persons.

All requests for payment of Administrative Claims, other than Claims by Professional Persons, must be filed with the Bankruptcy Court and served upon the Reorganized Debtor and his counsel no later than thirty (30) days after the Confirmation Date. Holders of Administrative Claims that do not file such requests by such bar date shall be forever barred from asserting such Claims against the Debtor or any of its property. Notwithstanding the foregoing, nothing provided herein shall prevent the Reorganized Debtor from paying any Administrative Claim that was not timely Filed but that was incurred in the ordinary course of business by the Debtor and is not disputed as to amount or liability.

## 2. Priority Tax Claims.

Priority Tax Claims are those Claims entitled to priority under section 507(a)(8) of the Bankruptcy Code. The Debtor estimates that there are approximately $100.00 in Priority Tax Claims.

## C. Classified Claims and Treatment.

The categories listed below classify Allowed Claims and Interests for all purposes, including voting, confirmation, and distribution pursuant to the Plan:

| Class | Treatment |
|---|---|
| Class 1A: Ocwen Loan Servicing Secured Claim (445 Kaiolu Street, # 303) | Unimpaired – not entitled to vote |
| Class 1B: Ocwen Loan Servicing Secured Claim (445 Kaiolu Street, # 505) | Unimpaired – not entitled to vote |
| Class 1C: Ocwen Loan Servicing Secured Claim (445 Kaiolu Street, # 604) | Unimpaired – not entitled to vote |
| Class 1D: Ocwen Loan Servicing Secured (91-005 Parish Drive) | Unimpaired – not entitled to vote |
| Class 2A: Chase Bank Secured Claim (445 Kaiolu Street, # 801) | Unimpaired – not entitled to vote |
| Class 2B: Chase Bank Secured Claim (444 Niu Street, PH-502) | Unimpaired – not entitled to vote |
| Class 2C: Chase Bank Secured Claim (2421 Ala Wai Boulevard, # 703) | Unimpaired – not entitled to vote |
| Class 2D: Chase Bank Secured Claim (725 Piikoi Street, # 207) | Unimpaired – not entitled to vote |
| Class 2E: Chase Bank Secured Claim (second mortgage 3206 Ahinahina Place) | Unimpaired – not entitled to vote |
| Class 3A: Bank of America Secured Claim (445 Kaiolu Street, # 812) | Unimpaired – not entitled to vote |
| Class 3B: Bank of America Secured Claim (3204-A Ahinahina Place) | Unimpaired – not entitled to vote |

U.S. Bankruptcy Court - Hawaii   #11-00998   Dkt # 254   Filed  11/18/11   Page 23 of 77

| | |
|---|---|
| Class 3C: Bank of America Secured Claim (second mortgage 3204-A Ahinahina Place) | Unimpaired – not entitled to vote |
| Class 3D: Bank of America Secured (second mortgage on 91-005 Parish Drive) | Unimpaired – not entitled to vote |
| Class 3E: Bank of America Secured Claim (55-145 Poohaili Street) | Unimpaired – not entitled to vote |
| Class 3F: Bank of America Secured Claim (2415 Ala Wai Boulevard, # 1903) | **Impaired** – entitled to vote |
| Class 4A: Citizens First Bank Secured Claim (1204 N. Broad Street, Rome, Georgia) | Unimpaired – not entitled to vote |
| Class 4B: Citizens First Bank Secured Claim (1206 N. Broad Street, Rome, Georgia) | Unimpaired – not entitled to vote |
| Class 4C: Citizens First Bank Secured Claim (1208 N. Broad. Street, Rome, Georgia) | Unimpaired – not entitled to vote |
| Class 5: American Services Secured Claim (2421 Ala Wai Boulevard, # 702) | Unimpaired – not entitled to vote |
| Class 6: PNC Secured Claim (444 Niu Street, PH-501) | Unimpaired – not entitled to vote |
| Class 7: Jerry Doyle Secured Claim (2450 Prince Edward Street #1207A) | Unimpaired – not entitled to vote |
| Class 8: Flagstar Bank Secured Claim (91-449 Ewa Beach Road) | Unimpaired – not entitled to vote |
| Class 9: Wells Fargo Bank Secured Claim (3206 Ahinahina Place) | Unimpaired – not entitled to vote |
| Class 10: Bank of Hawaii Secured Claim (444 Niu Street, PH-504) | Unimpaired – not entitled to vote |
| Class 11A: Green Tree Servicing LLC Secured Claim (second mortgage 445 Kaiolu Street, # 801) | **Impaired** – entitled to vote |
| Class 11B: Green Tree Servicing LLC Secured Claim (second mortgage 445 Kaiolu Street, # 812) | Unimpaired – not entitled to vote |
| Class 12: Estate of Gerald Larkin Secured Claim (second mortgage on 2415 Ala Wai Boulevard, # 1903) | **Impaired** – entitled to vote |
| Class 13: Tango Juliet Leasing (second mortgages on various properties) | **Impaired** – entitled to vote |
| Class 14: General Unsecured Claims | **Impaired** – entitled to vote |

21

| Class 15: Mary Simpson | **Impaired** – entitled to vote |
| Class 16: Equity Interest | **Unimpaired** – not entitled to vote |

### 1.    Class 1A:   Allowed Ocwen Loan Servicing Secured Claim (445 Kaiolu Street, # 303).

Class 1A consists of the secured claim of Ocwen Loan Servicing in connection with the real property located at 445 Kaiolu Street, Apt. 303, Honolulu, Hawaii 96815. As of January 2011, the estimated balance due on this loan was $94,560. According to the tax assessment that was in effect as of the Petition Date, the property is valued at $177,400. The mortgage is current. The Debtor intends to ~~sell the property and pay the lender, Cash equal to the value of its Allowed Secured Claim on the 30th day after the Effective Date of the Plan or as soon thereafter as practicable, provided, however, that the lender shall not be paid as part of its Allowed Secured Claim, any default interest, late charges or similar fees or expenses. The balance of the sale proceeds after payment of Ocwen Loan Servicing's first mortgage will be paid to the holder of the second mortgage, Tango Juliet (Class 13)~~retain the property in order to allow the property to be sold through a post-petition Rent to Own Agreement with John and Monica Kumalae dated July 19, 2011 whereby the Kumalaes acquired an option to purchase the property for $195,000. The mortgage loan is current and the legal, equitable, and contractual rights of the lender will be unaltered.

Class 1A is unimpaired, and Ocwen Loan Servicing is not entitled to vote to accept or reject the Plan.

**2.       Class 1B:   Allowed Ocwen Loan Servicing Secured Claim (445 Kaiolu Street, # 505).**

Class 1B consists of the secured claim of Ocwen Loan Servicing in connection with the real property located at 445 Kaiolu Street, Apt. 505, Honolulu, Hawaii 96815.  Ocwen Loan Servicing has a first mortgage lien on the property, which is current.  As of January 2011, the estimated balance on this loan was $90,199.  According to the tax assessment that was in effect as of the Petition Date, the property is valued at $178,400.  The Debtor will retain this property in order to sell his interest in this property through an Agreement of Sale, subject to Court approval, for $~~170,000.~~170,000.00 to Mariolito Asuncion and Filipana Sablan ("Asuncion Agreement of Sale").

Wollstein intends to seek Court approval for the Asuncion Agreement of Sale, pursuant to which the Asuncions will make a $25,000 downpayment upon execution of the Asuncion Agreement of Sale and thereafter make monthly interest-only payments for twenty years.  Upon the passage of the twenty year period, the remaining balance will be due and payable.  The Asuncions have the option to cancel the contract from the 13th month after the Asuncion Agreement of Sale is executed until the 24th month after the Asuncion Agreement of Sale is executed.

The mortgage loan is current and the legal, equitable, and contractual rights of the lender will be unaltered.

Class 1B is unimpaired, and Ocwen Loan Servicing is not entitled to vote to accept or reject the Plan.

### 3. Class 1C: Allowed Ocwen Loan Servicing Secured Claim (445 Kaiolu Street, # 604).

Class 1C consists of the secured claim of Ocwen Loan Servicing in connection with the real property located at 445 Kaiolu Street, Apt. 604, Honolulu, Hawaii 96815. Ocwen Loan Servicing has a first mortgage lien on the property. As of January 2011, the estimated balance due on this loan was $90,725. According to the tax assessment that was in effect as of the Petition Date, the property is valued at $176,300. The Debtor intends to retain the property in order to allow the property to be sold through the pending Agreement of Sale with Michael Faria— who owns the other 50% of the property. Wollstein, as seller, entered into an Agreement of Sale (the "Faria Agreement of Sale") on April 27, 2006 with Michael Faria ("Faria"). The Faria Agreement of Sale is recorded in Office of Assistant Registrar for the Land Court for the State of Hawaii as Doc. No. 3422314. Pursuant to the Faria Agreement of Sale, Faria paid a deposit of $43,000.00 and is required to make monthly interest only payments from May 1, 2006 until May 1, 2021. On May 1, 2021, the remaining unpaid principal and

interest become due and payable.  Faria is responsible for making payments of taxes.

The mortgage loan is current and the legal, equitable, and contractual rights of the lender will be unaltered.

Class 1C is unimpaired, and Ocwen Loan Servicing is not entitled to vote to accept or reject the Plan.

**4.    Class 1D:    Allowed Ocwen Loan Servicing Secured Claim (91-005 Parish Drive).**

Class 1D consists of the secured claims of Ocwen Loan Servicing in connection with the real property located at 91-005 Parish Drive, Ewa Beach, Hawaii 96706.  Ocwen has a first mortgage lien on the property.  As of January 2011, the estimated balance due on this loan was $260,271.  Bank of America has a second mortgage with an estimated balance of $60,203 as of January, 2011 (see Class 3D).   According to the tax assessment that was in effect as of the Petition Date, the property is valued at $425,200.  The mortgage loan is current. The Debtor intends to sell the property and pay the lender, Cash equal to the value of its Allowed Secured Claim on the 30th day after the Effective Date of the Plan or as soon thereafter as practicable, provided, however, that the lender shall not be paid as part of its Allowed Secured Claim, any default interest, late charges or similar fees or expenses, except as may be allowed by the Court.

Class 1D is unimpaired, and is not entitled to vote to accept or reject the Plan.

**5.      Class 2A:    Allowed Chase Bank Secured Claim (445 Kaiolu Street, # 801).**

Class 2A consists of the secured claim of Chase Bank in connection with the real property located at 445 Kaiolu Street, Apt. No. 801, Honolulu, Hawaii 96815.  Chase Bank has a first mortgage lien on the property.  As of January 2011, the estimated balance that remains due on this loan is $107,629.  As of August, 2011, there is an estimated delinquency of at least $10,400 on this loan. According to the tax assessment that was in effect as of the Petition Date, the property is valued at $161,800.  The Debtor intends to sell the property and pay the lender, Cash equal to the value of its Allowed Secured Claim on the 30th day after the Effective Date of the Plan or as soon thereafter as practicable, provided, however, that the lender shall not be paid as part of its Allowed Secured Claim, any default interest, late charges or similar fees or expenses.

This property is subject to a second mortgage held by Green Tree Servicing, LLC, assignee of Bank of America with an estimated balance of $71,241 as of January, 2011 (see Class 11A).

Class 2A is unimpaired, and is not entitled to vote to accept or reject the Plan.

6. **Class 2B: Allowed Chase Bank Secured Claim (444 Niu Street, PH-502).**

Class 2B consists of the secured claim of Chase Bank in connection with the real property located at 444 Niu Street, Apt. No. PH-502, Honolulu, Hawaii 96815. Chase holds a first mortgage lien on the property. As of January 2011, the estimated balance due on the loan was $403,015. According to the tax assessment that was in effect as of the Petition Date, the property is worth $532,600. The Debtor is delinquent on the loan, with an estimated arrearage as of August, 2011 of at least $49,612. The Debtor intends to retain this property as his primary residence. Unless Chase Bank and the Debtor agree to a different treatment, Chase Bank shall receive, 30 days after the Effective Date or as soon thereafter as is practicable, notwithstanding any contractual provision or applicable law that entitles the holder of the claim to demand or receive accelerated payment of such Allowed Claim after the occurrence of a default (A) be paid a cure of any such default that occurred prior to the Effective Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code, (B) have reinstated the maturity of such Claim as such maturity existed before such default, (C) be compensated for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law, and (D) otherwise not have altered the legal, equitable, or

U.S. Bankruptcy Court - Hawaii   #11-00998   Dkt # 254   Filed 11/18/11   Page 30 of 77

contractual rights to which such Allowed Claim entitles the holder of such

Allowed Claim.

Class 2B is unimpaired, and is not entitled to vote to accept or reject the

Plan.

**7.** **Class 2C:** **Allowed Chase Bank Secured Claim (2421 Ala Wai Boulevard, # 703)**

Class 2C consists of the secured claim of Chase Bank in connection with

the real property located at 2421 Ala Wai Boulevard, Apt. No. 703, Honolulu,

Hawaii 96815. Chase Bank has a first mortgage lien on the property. As of

January 2011, the estimated balance due on this loan was $82,429. According to

the tax assessment that was in effect as of the Petition Date, the property is worth

$139,500. The Debtor intends to retain the property in order to allow the

property to be sold through the pending Agreement of Sale with Melvin Kam

Hoon Wong and Laverne Kum Chin Wong dated as of May 5, 2004 which is

recorded in the Office of Assistant Registrar for the Land Court for the State of

Hawaii as Doc. No. 3110464 (the "Wong Agreement of Sale"). Pursuant to the

Wong Agreement of Sale, the Wongs paid a deposit of $16,740 and are required

to make monthly interest only payments from June 17, 2004 until May 17, 2017.

On May 17, 2017, the remaining unpaid principal and interest become due and

payable. The Wongs are responsible for making payments on taxes and common

expenses.  The mortgage loan is current and the legal, equitable, and contractual rights of the lender will be unaltered.

Class 2C is unimpaired, and is not entitled to vote to accept or reject the Plan.

### 8.     Class 2D:     Allowed Chase Bank Secured Claim (725 Piikoi Street, # 207)

Class 2D consists of the secured claim of Chase Bank in connection with the real property located at 725 Piikoi Street, Apt. 207, Honolulu, Hawaii 96814. Chase Bank has a first mortgage lien on the property.  As of January 2011, the estimated balance due to on this loan was $104,825.  The Debtor is delinquent on the Chase Bank mortgage in the estimated amount of $16,860 as of August 2011.  According to the tax assessment that was in effect as of the Petition Date, the property is valued at $165,000.  The Debtor intends to sell the property and pay the lender, Cash equal to the value of its Allowed Secured Claim on the 30th day after the Effective Date of the Plan or as soon thereafter as practicable, provided, however, that the lender shall not be paid as part of its Allowed Secured Claim, any default interest, late charges or similar fees or expenses, except as may be allowed by the Court.

Class 2D is unimpaired, and is not entitled to vote to accept or reject the Plan.

**9.    Class 2E:    Allowed Chase Bank Secured Claim (second mortgage 3206 Ahinahina Place)**

Class 2E consists of the secured claim of Chase Bank in connection with the real property located at in connection with the real property located at 3206 Ahinahina Place, Honolulu, Hawaii 96816.  Chase Bank has a second mortgage lien on the property.  Wells Fargo has a first mortgage lien on the property with an estimated balance of $282,800 as of January, 2011. (See class 9).  As of January 2011, the estimated balance that remains due to Chase Bank was $273,177.  As of August 2011, the Debtor is delinquent on the Chase Bank mortgage in the estimated amount of at least $39,431.  According to the tax assessment that was in effect as of the Petition Date, the property is valued at $865,600.  The Debtor intends to sell the property and pay the lender, Cash equal to the value of its Allowed Secured Claim on the 30th day after the Effective Date of the Plan or as soon thereafter as practicable, provided, however, that the lender shall not be paid as part of its Allowed Secured Claim, any default interest, late charges or similar fees or expenses, except as may be allowed by the Court.

Class 2E is unimpaired, and is not entitled to vote to accept or reject the Plan.

### 10. Class 3A: Allowed Bank of America Secured Claim (445 Kaiolu Street, # 812)

Class 3A consists of the secured claim of Bank of America in connection with the real property located at 445 Kaiolu Street, Apt. No. 812, Honolulu, Hawaii 96815. Bank of America has a first mortgage on the property. As of January 2011, the estimated balance on this loan was $120,261. As of August, 2011, there is an estimated delinquency of $12,338 on this loan. Bank of America has assigned its second mortgage on this property in the estimated amount of $47,304 to Green Tree Servicing, LLC (see class 11B). According to the tax assessment that was in effect as of the Petition Date, the property is valued at $183,900. The Debtor intends to sell the property and pay the lender, Cash equal to the value of its Allowed Secured Claim on the 30th day after the Effective Date of the Plan or as soon thereafter as practicable, provided, however, that the lender shall not be paid as part of its Allowed Secured Claim, any default interest, late charges or similar fees or expenses, except as may be allowed by the Court.

Class 3A is unimpaired, and is not entitled to vote to accept or reject the Plan.

U.S. Bankruptcy Court - Hawaii   #11-00088   Dkt # 254   Filed 11/18/11   Page 34 of 77

**11. Class 3B: Allowed Bank of America Secured Claim (3204-A Ahinahina Place)**

Class 3B consists of the secured claim of Bank of America in connection with the real property located at 3204-A Ahinahina Place, Honolulu, Hawaii 96816. Bank of America has a first mortgage lien on said property. As of January 2011, the estimated balance due on this loan was $384,473. The Debtor is delinquent on the loan, with an estimated arrearage as of August, 2011 of at least $41,540. Bank of America also has a second lien on said property with an estimated balance of $100,067 as of January 2011 (see class 3C). According to the tax assessment that was in effect as of the Petition Date, the property is valued at $581,900. The Debtor intends to ~~retain this~~sell the property. ~~Unless Bank of America~~ and pay ~~the~~ ~~Debtor agree to a different treatment, Bank of America shall receive, 30 days~~lender, Cash equal to the value of its Allowed Secured Claim on the 30th day after the Effective Date of the Plan or as soon thereafter as ~~is practicable, notwithstanding any contractual provision or applicable law that entitles the holder of the claim to demand or receive accelerated payment of such Allowed Claim after the occurrence of a default (A) be paid a cure of any such default that occurred prior to the Effective Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code, (B) have reinstated the maturity of such Claim as such maturity existed before such default, (C) be compensated for any damages incurred as a result of any~~

~~reasonable reliance by such holder on such contractual provision or such~~

~~applicable law, and (D) otherwise not have altered the legal, equitable, or~~

~~contractual rights to which such Allowed Claim entitles the holder of such~~

~~Allowed Claim.~~ practicable, provided, however, that the lender shall not be paid

as part of its Allowed Secured Claim, any default interest, late charges or similar

fees or expenses, except as may be allowed by the Court.   Class 3B is

unimpaired, and is not entitled to vote to accept or reject the Plan.

### 12.    Class 3C:    Allowed Bank of America Secured Claim (second mortgage 3204-A Ahinahina Place)

Class 3C consists of the secured claim of Bank of America in connection

with the real property located at 3204-A Ahinahina Place, Honolulu, Hawaii

96816.  Bank of America has a second mortgage lien on said property.  As of

January 2011, the estimated balance due on this loan was $100,067.  Bank of

America also has a first mortgage lien, on said property with an estimated

balance of $384,473 as of January 2011 (see class 3B).  According to the tax

assessment that was in effect as of the Petition Date, the property is valued at

$581,900.  The Debtor is delinquent on the loan, with an estimated arrearage as

of August, 2011 of $13,395.  The Debtor intends to ~~retain this~~sell the property~~ ~~

~~Unless Bank of America~~ and pay the ~~Debtor agree to a different treatment, Bank~~

~~of America shall receive, 30 days~~lender, Cash equal to the value of its Allowed

Secured Claim on the 30th day after the Effective Date of the Plan or as soon

thereafter as ~~is practicable, notwithstanding any contractual provision or applicable law that entitles the holder of the claim to demand or receive accelerated payment of such Allowed Claim after the occurrence of a default (A) be paid a cure of any such default that occurred prior to the Effective Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code, (B) have reinstated the maturity of such Claim as such maturity existed before such default, (C) be compensated for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law, and (D) otherwise not have altered the legal, equitable, or contractual rights to which such Allowed Claim entitles the holder of such Allowed Claim~~practicable, provided, however, that the lender shall not be paid as part of its Allowed Secured Claim, any default interest, late charges or similar fees or expenses, except as may be allowed by the Court.

Class 3C is unimpaired, and is not entitled to vote to accept or reject the Plan.

### 13. Class 3D: Allowed Bank of America Secured Claim (second mortgage 91-005 Parish Drive)

Class 3D consists of the secured claim of Bank of America in connection with the real property located at 91-005 Parish Drive, Ewa Beach, Hawaii 96706. Bank of America has a second mortgage with an estimated balance that remains due to Bank of America under its mortgage loan is $60,203 as of January, 2011.

U.S. Bankruptcy Court - Hawaii   #11-00088   Dkt # 254   Filed 11/18/11   Page 37 of 77

Ocwen Loan Servicing has a first mortgage lien, which is current (see class 1D).

As of January 2011, the estimated balances that remain due and owing under

Ocwen loan Servicing is $260,271. The Bank of America mortgage is current.

According to the tax assessment that was in effect as of the Petition Date, the

property is valued at $425,200. The Debtor intends to sell the property and pay

the lender, Cash equal to the value of its Allowed Secured Claim on the 30th day

after the Effective Date of the Plan or as soon thereafter as practicable, provided,

however, that the lender shall not be paid as part of its Allowed Secured Claim,

any default interest, late charges or similar fees or expenses, except as may be

allowed by the Court.

Class 3D is unimpaired, and is not entitled to vote to accept or reject the

Plan.

### 14.    Class 3E:    Allowed Bank of America Secured Claim (55-145 Poohaili Street)

Class 3E consists of the secured claim of Bank of America in connection with

the real property located at 55-145 Poohaili Street, Laie, Hawaii 96762. Bank of

America has a first mortgage lien on said property. As of January 2011, the

estimated balance that remains due to Bank of America under its mortgage loan

is $276,357. According to the tax assessment that was in effect as of the

Petition Date, the property is valued at $444,444. The Debtor intends to retain

the property in order to allow the property to be sold through the pending

Agreement of Sale to Berlin Kaio, dated May 5, 2004 (the "Kaio Agreement of Sale") which is recorded in the Bureau of Conveyances for the State of Hawaii as Doc. No. 2004-143320. Pursuant to the Kaio Agreement of Sale, Kaio paid a deposit of $44,444.44 and is required to make monthly interest only payments from August 15, 2004 until July 15, 2019. On July 15, 2019, the remaining unpaid principal and interest become due and payable. Kaio is responsible for making payments of taxes. The mortgage loan is current and the legal, equitable, and contractual rights of the lender will be unaltered.

Class 3E is unimpaired, and is not entitled to vote to accept or reject the Plan.

### 15. Class 3F: Allowed Bank of America Secured Claim (2415 Ala Wai Blvd., # 1903)

Class 3F consists of the secured claim of Bank of America in connection with the real property located at 2415 Ala Wai Boulevard, Apt. No. 1903, Honolulu, Hawaii 96815. Bank of America holds a first mortgage lien on the property. As of January 2011, the estimated balance that remains due to Bank of America under its mortgage loan is $309,955. The Debtor is delinquent on the loan with an estimated arrearage of at least $29,394, as of August, 2011. The Estate of Gerald Larkins has a second mortgage lien with an estimated balance of $100,000 as of January, 2011 (see Class 12). The Debtor intends to sell the property and pay the lender, Cash equal to the value of its Allowed Secured

U.S. Bankruptcy Court - Hawaii   #11-00088   Dkt # 254   Filed 11/18/11   Page 39 of 77

Claim on the 30th day after the Effective Date of the Plan or as soon thereafter as practicable, provided, however, that the lender shall not be paid as part of its Allowed Secured Claim, any default interest, late charges or similar fees or expenses, except as may be allowed by the Court. According to the tax assessment that was in effect as of the Petition Date, the property is valued at $302,300 such that Bank of America will not likely be paid in full from the sale of the property. Bank of America shall be paid the unsecured portion of its Allowed Claim in full with interest at the rate of three percent (3%) per annum in twelve (12) equal quarterly installments, beginning on the ninetieth day after the Effective Date, and ending on the ninetieth day after the third anniversary date of the Effective Date.

Class 3F is impaired, and is entitled to vote to accept or reject the Plan.

### 16. Class 4A: Allowed Citizens First Bank Secured Claim (1204 N. Broad Street, Rome, Georgia 30161)

Class 4A consists of the secured claim of Citizens First Bank in connection with the real property located at 1204 N. Broad Street, Rome, Georgia 30161. Citizens First Bank has a first mortgage lien on the property. As of January 2011, the estimated balance due on this loan was $35,700. The Debtor is delinquent on the loan, with an estimated arrearage as of August 2011 of at least $6,266.31. According to the tax assessment that was in effect as of the Petition Date, the property is valued at $100,000. The Debtor intends to sell the

property and pay the lender, Cash equal to the value of its Allowed Secured Claim on the 30th day after the Effective Date of the Plan or as soon thereafter as practicable, provided, however, that the lender shall not be paid as part of its Allowed Secured Claim, any default interest, late charges or similar fees or expenses, except as may be allowed by the Court.

Class 4A is unimpaired, and is not entitled to vote to accept or reject the Plan.

### 17. Class 4B: Allowed Citizens First Bank Secured Claim (1206 N. Broad Street, Rome, Georgia 30161)

Class 4B consists of the secured claim of Citizens First Bank in connection with the real property located at 1206 N. Broad Street, Rome, Georgia 30161. Citizens First Bank has a first mortgage lien on the property. As of January 2011, the estimated balance due on this loan is $32,653. The Debtor is delinquent on the loan, with an estimated arrearage as of August 2011 of at least $6,266.31. According to the tax assessment that was in effect as of the Petition Date, the property is valued at $125,000. The Debtor intends to sell the property and pay the lender, Cash equal to the value of its Allowed Secured Claim on the 30th day after the Effective Date of the Plan or as soon thereafter as practicable, provided, however, that the lender shall not be paid as part of its Allowed Secured Claim, any default interest, late charges or similar fees or expenses, except as may be allowed by the Court.

U.S. Bankruptcy Court - Hawaii   #11-00088   Dkt # 254   Filed 11/18/11   Page 41 of 77

Class 4B is unimpaired, and is not entitled to vote to accept or reject the Plan.

**18.    Class 4C:    Allowed Citizens First Bank Secured Claim (1208 N. Broad Street, Rome, Georgia 30161)**

Class 4C consists of the secured claim of Citizens First Bank in connection with the real property located at 1208 N. Broad. Street, Rome, Georgia 30161.  Citizens First Bank holds a first mortgage lien on the property.  As of January 2011, the estimated balance due on the loan was $41,350.  The Debtor is delinquent on the loan, with an estimated arrearage as of August 2011 of at least $7,935.32.  According to the tax assessment that was in effect as of the Petition Date, the property is valued at $150,000.  The Debtor intends to sell the property and pay the lender, Cash equal to the value of its Allowed Secured Claim on the 30th day after the Effective Date of the Plan or as soon thereafter as practicable, provided, however, that the lender shall not be paid as part of its Allowed Secured Claim, any default interest, late charges or similar fees or expenses, except as may be allowed by the Court.

Class 4C is unimpaired, and is not entitled to vote to accept or reject the Plan.

U.S. Bankruptcy Court - Hawaii   #11-00088   Dkt # 254   Filed  11/18/11   Page 42 of 77

**19. Class 5: Allowed America's Servicing Co. Secured Claim (2421 Ala Wai Boulevard, # 702)**

Class 5 consists of the secured claim of America's Servicing Co. ("Servicing") in connection with the real property located at 2421 Ala Wai Boulevard, Apt. No. 702, Honolulu, Hawaii 96815. Servicing has a first mortgage lien on the property. As of January 2011, the estimated balance due on this loan was $98,180. According to the tax assessment that was in effect as of the Petition Date, the property is valued at $170,000. The Debtor intends to retain the property in order to allow the property to be sold through the ~~pending~~ Wong Agreement of Sale ~~with Melvin Kam Hoon Wong and Laverne Kum Chin Wong~~. The mortgage is current and the legal, equitable, and contractual rights of the lender will be unaltered.

Class 5 is unimpaired, and is not entitled to vote to accept or reject the Plan.

**20. Class 6: Allowed PNC Secured Claim (444 Niu Street, Apt. No. PH-501)**

Class 6 consists of the secured claim of PNC Bank, National Association ("PNC") in connection with the real property located at 444 Niu Street, Apt. No. PH-501, Honolulu, Hawaii 96815. PNC holds a first mortgage lien on the property. As of January 2011, the estimated balance due on this loan is $337,728. According to the tax assessment that was in effect as of the Petition

40

Date, the property is worth $588,100. The Debtor is delinquent on the loan, with an estimated arrearage as of August, 2011 of $34,856. The Debtor intends to retain this property as his primary residence. Unless PNC and the Debtor the agree to a different treatment, PNC shall receive, 30 days after the Effective Date or as soon thereafter as is practicable, notwithstanding any contractual provision or applicable law that entitles the holder of the claim to demand or receive accelerated payment of such Allowed Claim after the occurrence of a default (A) be paid a cure of any such default that occurred prior to the Effective Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code, (B) have reinstated the maturity of such Claim as such maturity existed before such default, (C) be compensated for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law, and (D) otherwise not have altered the legal, equitable, or contractual rights to which such Allowed Claim entitles the holder of such Allowed Claim.

Class 6 is unimpaired, and is not entitled to vote to accept or reject the Plan.

**21.    Class 7:     Allowed Jerry Doyle Secured Claim (2450 Prince Edward Street #1207A)**

Class 7 consists of the secured claim of Jerry Doyle in connection with the real property located at 2450 Prince Edward Street, #1207A, Honolulu, Hawaii

96815.  Jerry Doyle has a first mortgage lien on the property, which is current.

As of January 2011, the estimated balance due on this loan was $80,000.  The

Debtor is current on this loan.  According to the tax assessment that was in effect

as of the Petition Date, the property is valued at $218,900.  The Debtor intends

to sell the property and pay the lender, Cash equal to the value of its Allowed

Secured Claim on the 30th day after the Effective Date of the Plan or as soon

thereafter as practicable, provided, however, that the lender shall not be paid as

part of its Allowed Secured Claim, any default interest, late charges or similar

fees or expenses, except as may be allowed by the Court.

Class 7 is unimpaired, and is not entitled to vote to accept or reject the

Plan.

**22.    Class 8:  Allowed Flagstar Bank Secured Claim (91-449 Ewa Beach Road)**

Class 8 consists of the secured claim of Flagstar Bank in connection with

the real property located at 91-449 Ewa Beach Road, Ewa Beach, Hawaii 96706.

Flagstar Bank has a first mortgage lien on the property.  As of January 2011, the

estimated balance due on this loan was $644,365.  According to the tax

assessment that was in effect as of the Petition Date, the property is valued at

$949,800.  The mortgage loan is current.  The Debtor intends to sell the property

and pay the lender, Cash equal to the value of its Allowed Secured Claim on the

30th day retain this property.  Unless Flagstar and the Debtor the agree to a

different treatment, Flagstar shall receive, 30 days after the Effective Date of the Plan or as soon thereafter as is practicable, provided, however, that the lender shall not be paid as part of its Allowed Secured Claim, any default interest, late charges or similar fees or expenses. notwithstanding any contractual provision or applicable law that entitles the holder of the claim to demand or receive accelerated payment of such Allowed Claim after the occurrence of a default (A) be paid a cure of any such default that occurred prior to the Effective Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code, (B) have reinstated the maturity of such Claim as such maturity existed before such default, (C) be compensated for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law, and (D) otherwise not have altered the legal, equitable, or contractual rights to which such Allowed Claim entitles the holder of such Allowed Claim.

Class 8 is unimpaired, and is not entitled to vote to accept or reject the Plan.

### 23. Class 9: Allowed Wells Fargo Bank Secured Claim (3206 Ahinahina Place)

Class 9 consists of the secured claim Wells Fargo in connection with the real property located at 3206 Ahinahina Place, Honolulu, Hawaii 96816. Chase Bank has a second mortgage lien in the estimated amount of $282,800 as of

January, 2011 (see Class 2E). As of January 2011 the estimated balance on this loan was $273,177. The Debtor is delinquent on the Wells Fargo mortgage in the estimated amount of at least $23,549 as of August 2011. According to the tax assessment that was in effect as of the Petition Date, the property is valued at $865,600. ~~The mortgage loan is current.~~ The Debtor intends to sell the property and pay the lender, Cash equal to the value of its Allowed Secured Claim on the 30th day after the Effective Date of the Plan or as soon thereafter as practicable, provided, however, that the lender shall not be paid as part of its Allowed Secured Claim, any default interest, late charges or similar fees or expenses, except as may be allowed by the Court.

Class 9 is unimpaired, and is not entitled to vote to accept or reject the Plan.

**24.    Class 10:    Allowed Bank of Hawaii Secured Claim (444 Niu Street, PH-504)**

Class 10 consists of the secured claim of Bank of Hawaii in connection with the real property located at 444 Niu Street, PH-504, Honolulu, Hawaii 96815. Bank of Hawaii has a first mortgage lien on the property. As of January 2011, the estimated balance due on this loan was $410,139. The Debtor is delinquent on the loan, with an estimated arrearage as of August 2011 of at least $27,110. According to the tax assessment that was in effect as of the Petition Date, the property is valued at $532,600. The Debtor intends to sell the property and pay the lender,

U.S. Bankruptcy Court - Hawaii   #11-00028   Dkt # 254   Filed 11/18/11   Page 47 of 77

Cash equal to the value of its Allowed Secured Claim on the 30th day after the

Effective Date of the Plan or as soon thereafter as practicable, provided, however,

that the lender shall not be paid as part of its Allowed Secured Claim, any default

interest, late charges or similar fees or expenses, except as may be allowed by the

Court.

Class 10 is unimpaired, and is not entitled to vote to accept or reject the

Plan.

### 25. Class 11A: Allowed Green Tree Servicing LLC Secured Claim (second mortgage 445 Kaiolu Street, # 801)

Class 11 consists of the secured claim of Green Tree Servicing LLC

("Green Tree") in connection with the real property located at 445 Kaiolu Street,

Apt. No. 801, Honolulu, Hawaii 96815. Chase Bank has a first mortgage on the

property in the estimated amount of $107,629 as of January, 2011. See Class

2A. As of January 2011, the estimated balance that remains due under Green

Tree's second mortgage was $71,241. As of August, 2011, there is an estimated

delinquency of $3,172 on this loan. The Debtor intends to sell the property and

pay the lender, Cash equal to the value of its Allowed Secured Claim on the 30th

day after the Effective Date of the Plan or as soon thereafter as practicable,

provided, however, that the lender shall not be paid as part of its Allowed

Secured Claim, any default interest, late charges or similar fees or expenses, except as may be allowed by the Court. According to the tax assessment that

was in effect as of the Petition Date, the property is valued at $161,800 such that

Green Tree will not be paid in full from the sale of the property. Green Tree

shall be paid the unsecured portion of its Allowed Claim in full with interest at

the rate of three percent (3%) per annum in twelve (12) equal quarterly

installments, beginning on the ninetieth day after the Effective Date, and ending

on the ninetieth day after the third anniversary date of the Effective Date.

Class 11A is impaired, and is entitled to vote to accept or reject the Plan.

### 3.26. Class 11B: Allowed Green Tree Servicing LLC Secured Claim (second mortgage 445 Kaiolu Street, # 812)

Class 11B consists of the secured claim of Green Tree in connection with

the real property located at 445 Kaiolu Street, Apt. No. 812, Honolulu, Hawaii

96815. Bank of America has a first mortgage on the property in the estimated

amount of $120,261 as of January, 2011. See Class 3A. As of January 2011, the

estimated balance that remains due under Green Tree's second mortgage was

$47,304. As of August, 2011, there is an estimated delinquency of at least

$1,873 on this loan. The Debtor intends to sell the property and pay the lender,

Cash equal to the value of its Allowed Secured Claim on the 30th day after the

Effective Date of the Plan or as soon thereafter as practicable, provided,

however, that the lender shall not be paid as part of its Allowed Secured Claim,

any default interest, late charges or similar fees or expenses, except as may be

allowed by the Court. According to the tax assessment that was in effect as of

the Petition Date, the property is valued at $183,900 such that Green Tree will likely not be paid in full from the sale of the property. Green Tree shall be paid the unsecured portion of its Allowed Claim in full with interest at the rate of three percent (3%) per annum in twelve (12) equal quarterly installments, beginning on the ninetieth day after the Effective Date, and ending on the ninetieth day after the third anniversary date of the Effective Date.

Class 11B is unimpaired, and is not entitled to vote to accept or reject the Plan.

### 27.    Class 12:    Allowed Estate of Gerald Larkin Secured Claim (second mortgage 2415 Ala Wai Boulevard, # 1903)

Class 12 consists of the secured claim of the Estate of Gerald Larkins in connection with the real property located at 2415 Ala Wai Boulevard, Apt. No. 1903, Honolulu, Hawaii 96815. The Estate of Gerald Larkins holds a second mortgage lien on the property. Bank of America holds a first mortgage lien on the property with an estimated balance of $309,955 as of January, 2011. As of January 2011, the estimated balance due to the Estate of Gerald Larkin was $100,000. The Debtor intends to sell the property and pay the lender, Cash equal to the value of its Allowed Secured Claim on the 30th day after the Effective Date of the Plan or as soon thereafter as practicable, provided, however, that the lender shall not be paid as part of its Allowed Secured Claim, any default interest, late charges or similar fees or expenses, except as may be allowed by the Court.   According to the tax

U.S. Bankruptcy Court - Hawaii   #11-00829   Dkt # 254   Filed  11/18/11   Page 50 of 77

assessment that was in effect as of the Petition Date, the property is valued at $302,300 such that the Estate of Gerald Larkin will likely not be paid in full from the sale of the property. The Estate of Gerald Larkin will be paid the unsecured portion of its Allowed Claim in full with interest at the rate of three percent (3%) per annum in twelve (12) equal quarterly installments, beginning on the ninetieth day after the Effective Date, and ending on the ninetieth day after the third anniversary date of the Effective Date.

Class 12 is impaired, and is entitled to vote to accept or reject the Plan.

**28.   Class 13:   Allowed Tango Juliet Leasing LLC Secured Claim (second mortgage on various properties)**

Class 13 consists of the secured claim of Tango Juliet in connection with its $200,000 note that is secured by the following properties:

1.    445 Kaiolu Street, Apt. 303, Honolulu, Hawaii 96815;

2.    445 Kaiolu Street, Apt. 505, Honolulu, Hawaii 96815;

3.    444 Niu Street, PH-504, Honolulu, Hawaii 96815;

4.    11-2919 Makoa Road, Lot 11, Puna District, Hawaii;

5.    11-2777 Noeula Road, Lot 27, Puna District, Hawaii;

6.    Old Sugar Cane Road, Puna District, Hawaii;

7.    444 Niu Street, PH-501, Honolulu, Hawaii 96815; and

8.    444 Niu Street, PH-502, Honolulu, Hawaii 96815.

U.S. Bankruptcy Court - Hawaii   #11-00088   Dkt # 254   Filed  11/18/11   Page 51 of 77

Tango Juliet holds second mortgage liens on properties 1, 2, 3, 7 and 8, and first mortgage liens on properties 4 through 6. The Debtor intends to liquidate and sell properties 1 through 6. Tango Juliet's $200,000 note ("Tango Juliet Note") will be reduced substantially through the sales of properties 1 through 6. Unless Tango Juliet and the Debtor agree to a different treatment, the Tango Juliet Note and mortgages shall be modified on the Effective Date, as follows (hereinafter referred to as the "Modified Note and Modified Mortgage" and together, the "Modified Note and Mortgage"):

      28.1   The Maturity Date of the Modified Note and Mortgage shall be extended to a date that is the first anniversary of the current maturity date of August 12, 2012.

      28.2   The principal amount of the Modified Note shall be an amount equal to the amount outstanding under the Tango Juliet Note as of the Effective Date.

      28.3   The Debtor shall make monthly interest only payments on the Modified Note commencing on the thirtieth (30th) day after the Effective Date and on the same day of the month thereafter until the Modified Note is paid in full or matures.

      28.4   The interest rate on the Modified Note shall be reduced from sixteen percent (16%) to twelve percent (12%) per annum.

U.S. Bankruptcy Court - Hawaii   #11-00088   Dkt # 254   Filed 11/18/11   Page 52 of 77

### 29.    Class 14 Allowed Unsecured Claims

Class 14 consists of the allowed unsecured claims. Exclusive of the Mary Simpson claim discussed below, the Debtor estimates it has approximately $150,000 in General Unsecured Claims.   Holders of Allowed General Unsecured Claims shall be paid in full their Allowed Claims with interest at the rate of three percent (3%) per annum in twelve (12) equal quarterly installments, beginning on the ninetieth day after the Effective Date, and ending on the ninetieth day after the third anniversary date of the Effective Date.

Failure of the Debtor to make two consecutive quarterly installment payments shall be deemed a default under the Plan.  Upon such default, the holder of an allowed General Unsecured Claim may file a declaration with the Court requesting the conversion of the Debtor's case to a chapter 7 liquidation (the "Conversion Declaration").  The Debtor shall have seven days from the filing of the Conversion Declaration to file a declaration contesting any allegation of default under the Plan as set forth in the Conversion Declaration.  If the Debtor fails to timely contest the Conversion Declaration, the Court shall enter an order converting this chapter 11 case to one under chapter 7 of the Bankruptcy Code.

Class 14 is impaired, and the holders of Allowed Claims in Class 14 are entitled to vote to accept or reject the Plan.

### 30.    Class 15 Allowed Mary Simpson Unsecured Claim

Class 15 consists of the unsecured claim of May Simpson ("Simpson") in connection with a $1,000,000 unsecured proof of claim filed by Simpson in this Case purportedly arising from a 2006 lawsuit filed by Simpson against the Debtor and the Waikiki Ebbtide board. The Debtor disputes ~~the~~ Simpson's Claim. To the extent ~~the Simpson~~her claim becomes an Allowed Claim, Simpson will be paid in full with interest at the rate of three percent (3%) per annum in twelve (12) equal quarterly installments, beginning on the ninetieth day after the Effective Date, and ending on the ninetieth day after the third anniversary date of the Effective Date.

Class 15 is impaired, and is entitled to vote to accept or reject the Plan.

### 31. Class 16 Equity Interest

Class 16 consists of the Debtor's legal, equitable, contractual, and other rights in the Estate. The Debtor shall retain his equity interest.

Class 16 is unimpaired, and is not entitled to vote to accept or reject the Plan.

### D. Treatment Of Executory Contracts.

The Plan identifies certain Agreements of Sale that the Debtor intends to assume on the Effective Date. The Plan also provides for the rejection of all executory contracts or unexpired leases to which the Debtor is a party unless such executory contracts or unexpired leases (i) shall have been previously assumed by

U.S. Bankruptcy Court - Hawaii   #11-00088   Dkt # 254   Filed   11/18/11   Page 54 of 77

the Debtor by Final Order of the Bankruptcy Court, (ii) shall be the subject of a motion to assume pending on or before the Effective Date, (iii) are listed on the schedule of assumed executory contracts or unexpired leases to be filed with the Plan Supplement, or (iv) are otherwise assumed pursuant to the terms of this Plan. The Debtor reserves the right to amend the Plan Supplement at any time prior to the Confirmation Date.

If the rejection of an executory contract or unexpired lease pursuant to this ~~Article III~~section gives rise to a Claim by the other party or parties to such contract or lease, such Claim, to the extent that it is timely Filed and is an Allowed Claim, shall be classified in Class ~~5.~~14. **A proof of Claim arising from the rejection of executory contracts or unexpired leases as provided herein must be filed with the Bankruptcy Court and served on the Reorganized Debtor and Reorganization Counsel no later than thirty (30) days after the Effective Date**; provided, however, that in the event a claimant has previously filed a proof of Claim based on the rejection of an executory contract or unexpired lease, no further proof of Claim needs to be Filed. Any Claims for which a proof of Claim has not been Filed and served within such time will be forever barred from assertion, and shall not be enforceable against the Debtor or its estate, assets, properties, or interests in property.

52

E.    **Means For Implementation Of The Plan.**

1.    **General Provisions.**

On the Effective Date all assets of the Estate shall be vested in the Reorganized Debtor.  The Reorganized Debtor shall become, on the Effective Date of the Plan, the exclusive representative of the Estate under section 1129(a)(5) of the Bankruptcy Code and other applicable law.  The Reorganized Debtor shall possess all rights and powers possessed by a trustee appointed under the Bankruptcy Code.

2.    **Retention And Enforcement Of Claims.**

On or after the Effective Date, the Reorganized Debtor, shall retain and may enforce any and all rights, causes of action, powers, privileges, licenses, and franchises of the Debtor or the Estate, including but not limited to all tax determinations under section 505 of the Code, and all causes of action arising under the Plan and the Bankruptcy Code, including avoiding powers and defenses to Disputed Claims arising under applicable non-bankruptcy law or under sections 502(d), 544, 545, 547, 548, 549, 550, 553, and 558 of the Bankruptcy Code; provided, however, that the Reorganized Debtor may not retain or enforce any right that is waived, relinquished, released, compromised or settled in accordance with this Plan.  Following the Effective Date, all remaining assets of the Debtor

U.S. Bankruptcy Court - Hawaii   #11-00088   Dkt # 254   Filed  11/18/11   Page 56 of 77

and the Estate shall be subject to the exclusive management, control, and custody of the Reorganized Debtor.

### 3.    Continued Jurisdiction Of The Bankruptcy Court.

After the Confirmation Date and before the Effective Date, and after the occurrence of the Effective Date, the Bankruptcy Court shall retain all jurisdiction as is legally permissible and have exclusive jurisdiction over any matter arising under the Bankruptcy Code, arising in or related to the Chapter 11 Case or the Plan, or relating to the following:

a.      To hear and determine all disputes or controversies arising in connection with or relating to the Plan or the interpretation, implementation, or enforcement of the Plan or the extent of any Entity's obligations incurred in connection with or released under the Plan;

b.      To determine or estimate the allowance, classification or priority of any Claims, or any groups of Claims, upon objection or motion by the Reorganized Debtor, or other parties in interest with standing to bring such objection or proceeding, and to estimate the amount reasonably necessary to reserve on account of any Disputed Claim or group of Disputed Claims;

c.      To determine the extent, validity, and priority of any Lien asserted against the property of the Estate;

U.S. Bankruptcy Court - Hawaii   #11-00098   Dkt # 254   Filed 11/18/11   Page 57 of 77

d.     To resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom;

e.     To enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents related to the Plan;

f.     To determine any and all motions, adversary proceedings, applications and contested or litigated matters that may be pending on the Effective Date, or that, pursuant to the Plan, may be instituted by the Reorganized Debtor after the Effective Date;

g.     To ensure that distributions on account of Allowed Claims are accomplished as provided herein;

h.     To hear and determine any objections to Claims or to proofs of Claim filed, both before and after the Confirmation Date, including any objections to the classification of any Claim, and to allow, disallow, determine, liquidate, classify, estimate or establish the priority of or secured or unsecured status of any Claim, in whole or in part;

U.S. Bankruptcy Court - Hawaii   #11-00088   Dkt # 254   Filed  11/18/11   Page 58 of 77

i.     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed or vacated;

j.     To issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

k.     To consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

l.     To hear and determine all applications for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date;

m.     To issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan or any provision thereof;

n.     To determine any other matters that may arise in connection with or related to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document related to the Plan or the Disclosure Statement;

o.     To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

56

p.      To hear any other matter or for any purpose specified in the Confirmation Order that is not inconsistent with the Bankruptcy Code; and

q.      To enter a final decree closing the Chapter 11 Case.

**F.      Objections To Claims And Distributions.**

Only the Debtor or, following the Effective Date, the Reorganized Debtor, shall have the right to object to the allowance of Claims Filed with the Bankruptcy Court with respect to which liability or allowance in whole orff in part is disputed. All objections shall be litigated to Final Order or compromised and settled or otherwise resolved, subject to approval by the Bankruptcy Court. Unless otherwise ordered by the Bankruptcy Court, the Debtor shall file and serve all objections to Claims as soon as practicable, but in no event later than 60 days after the Effective Date or such later date as may be provided in the Confirmation Order or pursuant to an Order of the Bankruptcy Court; provided, however, that the foregoing Claims objection deadline shall not prohibit or bar the Reorganized Debtor from objecting to late-filed Claims or amendments to Claims, raising new objections to Disputed Claims based upon newly discovered facts, or seeking reconsideration of any Claim that has been allowed.

No payment or distribution will be made with respect to all or any portion of a Disputed Claim until such Claim is an Allowed Claim. Distributions to each

U.S. Bankruptcy Court - Hawaii   #11-00088   Dkt # 254   Filed  11/18/11   Page 60 of 77

holder of a Disputed Claim (but only to the extent that it ultimately becomes an Allowed Claim) will be made in accordance with this Plan.

G.    **Reservation Of Rights.**

In the event that the Plan is not substantially consummated, the Debtor and the Reorganized Debtor shall not have waived, and shall not be deemed to have waived, any right or legal argument with respect to such purchase price allocations or any issue or matter in connection therewith, arising therefrom or relating thereto, and the Debtor, the Reorganized Debtor and other parties in interest expressly reserve all of such rights and legal arguments, including, without limitation, the rights to contest such allocations and valuations, in whole or in part, and to submit different or alternative allocations or valuations in any successor plan or in litigation regarding the Estate.

H.    **Modification Of The Plan.**

The Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan at any time prior to the entry of the Confirmation Order.  After the entry of the Confirmation Order, the Debtor may, upon order of the Bankruptcy Court, amend or modify the Plan in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.  A holder of a Claim that has accepted

U.S. Bankruptcy Court - Hawaii   #11-00088   Dkt # 254   Filed  11/18/11   Page 61 of 77

the Plan shall be deemed to have accepted the Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim of such holder.

## IV.    CONFIRMATION OF THE PLAN.

*Because the law with respect to confirmation of a plan of reorganization is very complex, creditors concerned with issues regarding confirmation of the Plan should consult with their own attorneys.*  The following discussion is intended solely for the purpose of providing basic information concerning certain confirmation issues.  The Debtor cannot and does not represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Bankruptcy Court may confirm the Plan.  Some of the requirements discussed in this Disclosure Statement include acceptance of the Plan by the requisite number of holders of Claims, and whether the Plan pays such holders at least as much as they would receive in a liquidation of the Debtor under chapter 7 of the Bankruptcy Code.  These requirements, however, are not the only requirements for confirmation, and the Bankruptcy Code will not confirm the Plan unless and until it determines that the Plan satisfies all applicable requirements, including requirements not referenced in this Disclosure Statement.

A.      **Voting And Right To Be Heard At Confirmation**

1.      **Who May Support Or Object To Confirmation Of The Plan?**

Any party in interest may support or object to the confirmation of the Plan. Even entities that may not have a right to vote (e.g., entities whose Claims are classified into an unimpaired Class) may still have a right to support or object to confirmation of the Plan. (See Section I.C.2 for information regarding the applicable deadlines for objecting to confirmation of the Plan).

2.      **Who May Vote To Accept Or Reject The Plan?**

A holder of a Claim generally has a right to vote for or against the Plan if their Claim is both "allowed" for purposes of voting and classified into an impaired Class.

a)      **What Is An Allowed Claim For Voting Purposes?**

As noted above, a creditor's Claim must be "allowed" for purposes of voting in order for such claim to have the right to vote on the Plan. Generally, for voting purposes, a Claim is deemed "allowed" if (i) a proof of Claim was timely filed, or (ii) if no proof of Claim was filed, the holder of the Claim is identified in the Schedules as other than "disputed," "contingent," or "unliquidated." In either case, when an objection to a Claim has been filed, the claim holder cannot vote unless

U.S. Bankruptcy Court - Hawaii   #11-00088   Dkt # 254   Filed 11/18/11   Page 63 of 77

the Bankruptcy Court, after notice and hearing, either overrules the objection or allows the claim for voting purposes.

### 3.    What Is An Impaired Claim?

As noted above, the holder of a Claim has the right to vote on the Plan if that Claim is allowed and classified into a Class that is impaired under the Plan. A Class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that Class with respect to their claims. The Debtor believes that Classes 3F, 11A, and 12-15 are impaired under the Plan. Any party that disputes such characterization, however, may request that the Bankruptcy Court find that its Claim is impaired in order to obtain the right to vote on the Plan.

### B.    Who Is Not Entitled To Vote?

The holders of the following types of Claims are not entitled to vote on the Plan: (a) Claims that have been disallowed; (b) Claims that are subject to a pending objection or Scheduled as disputed, contingent or unliquidated and that have not been allowed for voting purposes; (c) Claims in unimpaired Classes; (d) Claims in impaired Classes that do not receive or retain any interest, property, or other consideration under the Plan; and (e) Claims entitled to priority pursuant to sections 507(a)(1), (a)(2), and (a)(7) of the Bankruptcy Code. Holders of Claims in unimpaired Classes are not entitled to vote because such Classes are deemed to have accepted the Plan. Holders of Claims entitled to priority pursuant to sections

U.S. Bankruptcy Court - Hawaii   #11-00088   Dkt # 254   Filed 11/18/11   Page 64 of 77

507(a)(1), (a)(2), and (a)(7) of the Bankruptcy Code are not entitled to vote because such Claims are not placed in Classes and they are required to receive certain treatment specified by the Bankruptcy Code. Holders of Claims of the type described above, however, nevertheless may have the right to support or object to the confirmation of the Plan.

### C. Votes Necessary To Confirm The Plan

The Bankruptcy Court cannot confirm the Plan unless, among other things, (a) at least one impaired Class has accepted the Plan without counting the votes of any insiders within that Class; and (b) either all impaired Classes have voted to accept the Plan, or the Plan is eligible to be confirmed by "cramdown" with respect to any dissenting impaired Class, as discussed in Section I.B herein.

#### 1. Votes Necessary For A Class To Accept The Plan

A Class of Claims is considered to have accepted the Plan when more than one-half in number and at least two-thirds in dollar amount of the Claims that actually voted in that Class have voted in favor of the Plan.

#### 2. Treatment Of Nonaccepting Classes

As noted above, even if certain impaired Classes do not accept the proposed Plan, the Bankruptcy Court may nonetheless confirm the Plan if the nonaccepting Classes are treated in the manner required by the Bankruptcy Code. The process by which nonaccepting Classes are forced to be bound by the terms of a plan is

U.S. Bankruptcy Court - Hawaii   #11-00088   Dkt # 254   Filed  11/18/11   Page 65 of 77

commonly referred to as a "cramdown."  Specifically, the Bankruptcy Code allows

the Plan to be "crammed down" on nonaccepting Classes of Claims if the Plan

meets the requirements of section 1129(a)(1) through (a)(7) and 1129(a)(9)

through (a)(13) of the Bankruptcy Code and if the Plan does not "discriminate

unfairly" and is "fair and equitable" as those terms are defined in section 1129(b)

of the Bankruptcy Code.

### 3.    Request For Confirmation Despite Nonacceptance By One or More Impaired Classes

The Debtor has requested that the Bankruptcy Court confirm the Plan by

cramdown on any impaired Class that does not vote to accept the Plan, and the

Debtor believes that cramdown is appropriate under the circumstances.

### D.    Liquidation Analysis

Another confirmation requirement is the so-called "Best Interests Test"

created by section 1129(a)(7) of the Bankruptcy Code.  The Best Interests Test

requires that, if a holder of a Claim is in an impaired Class and does not vote to

accept the Plan, such holder receives or retains an amount under the Plan not less

than the amount that such holder would receive or retain if the Debtor was to be

liquidated under chapter 7 of the Bankruptcy Code.

In a chapter 7 case, a trustee or trustees would be elected or appointed to

liquidate the Debtor's assets for distribution to creditors in accordance with the

priorities set forth in the Bankruptcy Code.  Under those priorities, secured

U.S. Bankruptcy Court - Hawaii   #11-00088   Dkt # 254   Filed  11/18/11   Page 66 of 77

creditors generally are paid first from the sales proceeds of properties securing their liens. Administrative expenses generally are next to receive payment. Unsecured creditors then are paid from any remaining sales proceeds, according to their statutory and contractual rights to priority. Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims. Finally, shareholders receive the balance, if any, that remains after all creditors are paid.

For the Bankruptcy Court to be able to confirm the Plan, it must find that holders of Claims who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a hypothetical chapter 7 liquidation with respect to the Debtor. The Debtor submits that this requirement is met here because, among other things, the Plan provides for the liquidation of the Debtor in a manner that is at least as efficient as would occur in the event that the Bankruptcy Case was converted to a case under chapter 7 of the Bankruptcy Code. In fact, there are a number of reasons why the Plan will result in greater recoveries to holders of Allowed Claims than would result under a chapter 7 liquidation case with respect to the Debtor.

In a chapter 7 case, a trustee would be appointed to liquidate the Debtor's assets for distribution to creditors in accordance with the priorities set forth in the Bankruptcy Code. Under those priorities, secured creditors generally are paid first

U.S. Bankruptcy Court - Hawaii   #11-00088   Dkt # 254   Filed  11/18/11   Page 67 of 77

from the sales proceeds of properties securing their liens. Administrative expenses generally are paid next. Next unsecured creditors then are paid from any remaining sales proceeds, according to their statutory and contractual rights to priority. Unsecured priority creditors (such as pre-petition taxes) are paid before general unsecured creditors. Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims. Finally, shareholders receive the balance, if any, that remains after all creditors are paid.

| ASSETS: | LOW | HIGH |
|---|---|---|
| Cash-In-Bank (as of 9/28/11) | 7,032 | 7,032 |
| Estimated Value of Remaining Assets to Be Liquidated | | |
| 445 Kaiolu (Rosalei) (excluding #604) | 561,200 | 701,500 |
| 159 Kaiulani (Ebbtides) | 1,120,000 | 1,400,000 |
| 444 Niu Street (Hawaiian Monarch) | 1,280,000 | 1,600,000 |
| 2415 Ala Wai Blvd. #1903 | 240,000 | 300,000 |
| 2450 Prince Edward (Kuhio Village) | 144,000 | 180,000 |
| 725 Piikoi (Piikoi Plaza) | 100,000 | 165,000 |
| 3204A Ahinahina Place | 522,400 | 653,000 |
| 3206 Ahinahina | 692,480 | 865,600 |
| Ewa Beach Properties | 840,000 | 1,400,000 |
| Georgia Properties | 192,000 | 240,000 |
| 425 Ena Road 306A | 96,000 | 120,000 |
| Big Island Properties | 78,320 | 97,900 |

U.S. Bankruptcy Court - Hawaii   #11-00088   Dkt # 254   Filed  11/18/11   Page 68 of 77

| | Low | High |
|---|---|---|
| Accounts Receivable | 32,635 | 32,635 |
| Total Assets: | 5,906,067 | 7,061,167 |
| | | |
| LIABILITIES: | Low | High |
| Secured Claims | 5,157,290 | 5,157,290 |
| Administrative Claims | | |
|     Professionals | 200,000 | 250,000 |
|     Estimated Priority Claims | 100 | 100 |
|     Chapter 7 Trustee Commission | 146,000 | 180,645 |
| Total Liabilities Ahead of Unsecured Claims | 5,503,390 | 5,588,035 |
| Estimated Unsecured Claims | 150,000 | 1,150,000 |
| Total Liabilities | 5,653,390 | 6,738,035 |
| Balance for Distribution to Class 14/15 Claims | 402,677 | 1,473,132 |
| Estimated Chapter 7 Distribution | 100% | 100.0% |

In a chapter 7 case, a chapter 7 trustee with no familiarity with the bankruptcy case would be appointed to complete the liquidation and distribution process. Among other things, a chapter 7 trustee would have to hire separate counsel and would be entitled to a commission from distributions. These expenses constitute administrative claims.

In sum, the total liquidation values of the Debtor's assets are estimated to be between approximately $5.91 million to $7.1 million but there are approximately $5.5 million to $5.6 million in secured, administrative and priority claims that must

U.S. Bankruptcy Court - Hawaii   #11-00088   Dkt # 254   Filed  11/18/11   Page 69 of 77

be paid before holders of pre-petition general unsecured claims receive a distribution.

For the Bankruptcy Court to be able to confirm the Plan, it must find that holders of Claims and Interests who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a hypothetical chapter 7 liquidation of the Debtor. The Debtor submits that this requirement is met here because, among other things, the Plan pays unsecured creditors in full on their Allowed Claims, with interest over a three year period, which is as much as creditors would receive if this chapter 11 reorganization case were converted to a liquidation case under chapter 7 of the Bankruptcy Code.

### E.       Feasibility

Because the Plan contemplates a liquidation of the assets of the Debtor, the Debtor submits that the feasibility requirement set forth in section 1129(a)(11) is not applicable to the Plan.

### V.       CERTAIN FEDERAL INCOME TAX CONSEQUENCES

### A.       Introduction

Implementation of the Plan may have federal, state, and local tax consequences to the Debtor and its estate as well as to the creditors and shareholders of the Debtor. No tax opinion has been sought or will be obtained with respect to any tax consequences of the Plan, and the following disclosure does

not constitute and is not intended to constitute either a tax opinion or tax advice to any person.

This disclosure is provided for informational purposes only. Moreover, this disclosure summarizes only certain of the federal income tax consequences associated with the Plan's confirmation and implementation and does not attempt to comment on all such aspects. Similarly, this disclosure does not attempt to consider any facts or limitations applicable to any particular creditor or shareholder which may modify or alter the consequences described below. This disclosure also does not address state, local, or foreign tax consequences or the consequences of any federal tax other than the federal income tax.

This disclosure is based upon the provisions of the Internal Revenue Code of 1986, as amended, the regulations promulgated thereunder, existing judicial decisions, and administrative rulings. In light of the numerous recent amendments to the Internal Revenue Code, there can be no assurance that legislative, judicial, or administrative changes will not be forthcoming that would affect the accuracy of the discussion below. Any such changes could be material and could be retroactive with respect to the transactions entered into or completed prior to the enactment or promulgation thereof. Finally, the tax consequences of certain aspects of the Plan are uncertain due to a lack of applicable legal authority and may be subject to judicial or administrative interpretations that differ from the discussion below.

U.S. Bankruptcy Court - Hawaii   #11-00088   Dkt # 254   Filed  11/18/11   Page 71 of 77

Creditors and shareholders therefore are advised to consult with their own

tax advisors regarding the tax consequences to them and to the Debtors of the

transactions contemplated by the Plan, including federal, state, local, and foreign

tax consequences.

### B.      U.S. Federal Income Tax Consequences to Holders of Claims

The U.S. Federal income tax consequences to Holders of Claims

arising from the distributions to be made in satisfaction of their Claims pursuant to

the Plan may vary, depending upon, among other things: (a) the type of

consideration received by the Holder of a Claim in exchange for the Claim; (b) the

nature of the indebtedness owed to it; (c) whether the Holder has previously

claimed a bad debt or worthless security deduction in respect of its Claim; (d)

whether such Claim constitutes a security; (e) whether the Holder of a Claim is a

citizen or resident of the United States for tax purposes, or otherwise subject to

U.S. Federal income tax on a net income basis; (f) whether the Holder of a Claim

reports income on the accrual or cash basis; and (g) whether the Holder of a Claim

receives distributions under the Plan in more than one taxable year. For tax

purposes, the modification of a Claim may represent an exchange of the Claim for

a new Claim, even though no actual transfer takes place. In addition, where gain or

loss is recognized by a Holder of a Claim, the character of such gain or loss as

long-term or short-term capital gain or loss or as ordinary income or loss will be

69

determined by a number of factors, including the tax status of the Holder, whether the Claim constitutes a capital asset in the hands of the Holder and how long the Claim has been held or is treated as having been held, whether the Claim was acquired at a market discount, and whether and to what extent the Holder previously claimed a bad debt or worthless stock or securities deduction with respect to the underlying Claim. A Holder who purchased its Claim from a prior holder at a discount to its face amount may be subject to the market discount rules of the Code. Under those rules, assuming that the Holder has made no election to amortize the market discount into income on a current basis with respect to any market discount instrument, any gain recognized on the exchange of its Claim (subject to a *de minimis* rule) generally would be characterized as ordinary income to the extent of the accrued market discount on such Claim as of the date of the exchange.

1.      **General Treatment of Holders of Claims**

Pursuant to the Plan, the Debtor will transfer assets of the Debtor, either directly or indirectly, to holders of Allowed Claims in satisfaction and discharge of such Claims. Holders of such Claims will likely recognize gain or loss equal to the amount realized under the Plan in respect of their Claims less their respective tax bases in their Claims. The amount realized for this purpose will generally equal the sum of the cash and the fair market value of any other

U.S. Bankruptcy Court - Hawaii   #11-00098   Dkt # 254   Filed  11/18/11   Page 73 of 77

consideration received under the Plan in respect of their Claims. Any gain or loss recognized in the exchange will be capital or ordinary depending on the status of the Claim in the Holder's hands.

To the extent that cash received or deemed received by a Holder of a Claim is attributable to accrued interest on the Claim, the cash will be deemed made in payment of such interest. The federal income tax laws are unclear on how much consideration will be deemed attributable to accrued interest when partial payments are made on a debt on which both principal and interest are owed. To the extent that the Holder of a Claim has not yet included the accrued interest in gross income, the cash deemed received in payment of such interest will generally be included in the Holder's gross income for federal income tax purposes. To the extent the Holder has previously included accrued interest on the Claim in gross income, the cash deemed received in payment of such interest generally will not be included in gross income. The Holder of an Allowed Claim may be able to claim a deductible loss if the cash deemed received for the accrued interest is less than the amount the Holder had previously included in gross income.

## 2. Bad Debt Deduction

To the extent the Holder of an Allowed Claim under the Plan receives in respect of a Claim an amount less than the Holder's tax basis in such Claim may be entitled to a bad debt deduction under section 166(a) of the Code. The rules

U.S. Bankruptcy Court - Hawaii   #11-00998   Dkt # 254   Filed  11/18/11   Page 74 of 77

regarding the ability of a taxpayer, who believes that a debt owed to it will not be collected in full to take a deduction related to such debt's partial or total worthlessness are very complex. Moreover, the application and impact of such rules vary greatly depending upon a taxpayer's individual circumstances, including the facts and circumstances of the holder, the obligor, and the instrument with respect to which a deduction is claimed. Holders of Claims are therefore urged to consult their tax advisors with respect to the allowability of such a deduction.

### 3. Importance of Obtaining Professional Tax Assistance

THE FOREGOING DISCUSSION IS INTENDED ONLY AS A SUMMARY OF CERTAIN POTENTIAL TAX CONSEQUENCES OF THE PLAN AND IS NOT A SUBSTITUTE FOR INDIVIDUALLY TAILORED TAX ADVICE FROM A COMPETENT TAX ADVISOR. THE ABOVE DISCUSSION IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT TAX ADVICE. THE TAX CONSEQUENCES OF THE PLAN ARE IN MANY CASES COMPLEX, UNCLEAR AND UNCERTAIN AND MAY VARY DEPENDING ON A NUMBER OF DIFFERENT FACTORS, INCLUDING A CLAIMHOLDER'S PARTICULAR CIRCUMSTANCES. ACCORDINGLY, CLAIMHOLDERS ARE URGED TO CONSULT THEIR TAX ADVISORS ABOUT THE FEDERAL, STATE AND LOCAL, AND APPLICABLE FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.

72

## VI. RECOMMENDATION AND CONCLUSION

The Debtor believes that confirmation and implementation of the Plan are preferable to all other available and feasible alternatives because under the Plan the Reorganized Debtor -- which is familiar with the Debtor's business operations, the Disputed Claims and remaining assets -- will complete the liquidation. Accordingly, the Debtor believes that confirmation of the Plan will provide for a more efficient and favorable liquidation of assets and an earlier distribution to holders of Claims than would the appointment of a chapter 7 trustee who is unfamiliar with the Bankruptcy Case. The Debtor thus urges holders of impaired Claims to vote to accept the Plan by so indicating on their ballots and returning them as specified in this Disclosure Statement and on their ballots.

DATED: Honolulu, Hawaii, ~~September 30,~~ November 18, 2011

> /s/ Chuck C. Choi
> Chuck C. Choi
> Allison A. Ito
> Attorneys for John DeHart Wollstein

U.S. Bankruptcy Court - Hawaii   #11-00098   Dkt # 254   Filed  11/18/11   Page 76 of 77

Document comparison by Workshare Compare on Friday, November 18, 2011
5:10:25 PM

| Input: | |
|---|---|
| Document 1 ID | file://C:\Documents and Settings\aito.WCELAW\Desktop\WOLLSTEIN DISCLOSURE STATEMENT V2.DOC |
| Description | WOLLSTEIN DISCLOSURE STATEMENT V2 |
| Document 2 ID | file://C:\Documents and Settings\aito.WCELAW\Desktop\WOLLSTEIN DISCLOSURE STATEMENT V3.DOC |
| Description | WOLLSTEIN DISCLOSURE STATEMENT V3 |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 74 |
| Deletions | 42 |
| Moved from | 1 |
| Moved to | 1 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 118 |