WAGNER CHOI & VERBRUGGE
CHUCK C. CHOI
ALLISON A. ITO
745 Fort Street, Suite 1900
Honolulu, Hawaii 96813
Telephone: (808) 533-1877
Facsimile: (808) 566-6900
cchoi@hibklaw.com
aito@hibklaw.com

Attorneys for JOHN DEHART WOLLSTEIN,
Debtor and Debtor-in-Possession

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF HAWAII

| In re: | Case No. 11-00098 |
|---|---|
| | (Chapter 11) |
| JOHN DEHART WOLLSTEIN, | |
| | Confirmation Hearing |
| Debtor and | Date: March 12, 2012 |
| | Time: 10:30 a.m. |
| Debtor-in-Possession | Judge: Hon. Robert J. Faris |

**MEMORANDUM IN SUPPORT OF
CONFIRMATION OF DEBTOR'S [SECOND AMENDED] PLAN OF
REORGANIZATION DATED AS OF JANUARY 23, 2012**

JOHN DEHART WOLLSTEIN, the Debtor and Debtor-in-possession herein (the "Debtor"), hereby submits this Memorandum in Support of Confirmation of Debtor's [Second Amended] Plan of Reorganization filed by the Debtor on January 23, 2012 ("Plan"). Capitalized terms not herein defined shall have the meaning set

forth in the Plan. In support of confirmation of the Plan, the Debtor respectfully represents:

I.     **BACKGROUND AND PRELIMINARY STATEMENT**

The Debtor is a long-time resident of Hawaii who purchased his first investment property in Hawaii in 1968. Since then, the Debtor has purchased and sold various properties, often on Agreements of Sale whereby he purchased or sold interests in certain properties, provided that the monthly payments by the "buyer" was adequate to allow the "seller" to make debt service payments on the property. Over the course of several decades the Debtor built up a large portfolio of properties in this manner.

The Debtor generates income by renting properties, which rental income generally covered the monthly mortgage payments and related property expenses. Until approximately 2009, the Debtor was able to service the dozens of mortgages on his various investment properties from rents and interest payments received from buyers under Agreements of Sale. However, as a result of the downturn in the economy starting in 2008, the Debtor experienced a series of financial challenges. Refinancing or modifying existing loans with institutional lenders became more difficult. The property rental market also suffered a decline in general and certain of the Debtor's tenants defaulted on their obligations. The Debtor also experienced vacancies at certain of his higher rental properties. As a result, the Debtor suffered cash flow problems which led to his defaulting on

2

several mortgages.

On January 14, 2011 ("Petition Date"), the Debtor commenced this reorganization case by filing a *pro se* voluntary petition for relief under chapter 11 of title 11 of the United States Code ("Bankruptcy Code") in the United States Bankruptcy Code for the District of Hawaii ("Court"). The Debtor filed for bankruptcy to stop a non-judicial foreclosure commenced by PNC Bank on the Debtor's interest in Penthouse 501 at the Hawaiian Monarch, located at 444 Niu Street.

The Debtor owns, directly or indirectly, approximately 57 properties located in Hawaii, and in Georgia. The 30 Ebbtide Units make up the majority of these holdings. The Debtor is the sole member of the following Hawaii-registered limited liability companies: Wollstein Big Island Properties LLC, Wollstein Hawaiian Ebbtide Rentals LLC, Wollstein Oahu Properties LLC, and Wollstein Rosalei Rentals LLC. These entities own all or most of the Debtor's interest in his properties located on the island of Hawaii, the Ebbtide Units, and the Waikiki Rosalei Condominium, located at 445 Kaiolu Street, Honolulu, Hawaii 96815.

The Plan provides for the liquidation of most of the Debtor's real estate holdings and the distribution of proceeds from that sale to holders of Allowed Claims according to their priorities and classifications, as set forth in the Plan. All allowed claims will be paid in full.

Pursuant to an order entered herein on January 26, 2012, the Court approved

3

U.S. Bankruptcy Court - Hawaii   #11-00098   Dkt # 335   Filed 02/07/12   Page 3 of 20

the Disclosure Statement for the Plan and scheduled, among other dates, a confirmation hearing of March 12, 2012. *See* Docket # 322. A solicitation package, consisting of the Plan, Disclosure Statement, ballot(s) if applicable, and Notice of Confirmation Hearing, was sent to all creditors and parties in interest on January 27, 2012. The balloting deadline in this case is March 2, 2012. Ballot tabulations are due on March 5, 2012.

The Debtor requests that the Court confirm the Plan. Objections to the Plan will be addressed by the Debtor in an omnibus response to be filed with the Court and at the Confirmation Hearing. The Plan meets all of the requirements of 11 U.S.C. § 1129, and the Plan is fair and equitable and does not unfairly discriminate against impaired non-accepting classes.

## II. SUMMARY OF PLAN AND TREATMENT

### A. Overview of Classification of Claims

The Debtor's largest creditor is Flagstar Bank NA ("Flagstar"), which is owed approximately $645,000. Flagstar's claim is secured by a first mortgage on property located at 91-449 Ewa Beach Road (the "Ewa Beach Road Property").

The Debtor's other secured creditors are: (a) Ocwen, which is the holder of four separate mortgages secured by four different properties; (b) Chase Bank who has five separate mortgages on five different properties; (c) Bank of America, who is the holder of six separate mortgages secured by six separate properties; (d) Citizens First Bank, who is the holder of a mortgage secured by three properties

4

located in Rome, Georgia; (e) America's Servicing Co., who is the holder of a mortgage secured by one property located in Honolulu, HI; (f) PNC Bank who is the holder of a mortgage secured by one property located in Honolulu, HI; (g) Jerry Doyle who is the holder of a mortgage secured by one property located in Honolulu, HI; (h) Wells Fargo Bank who is the holder of a mortgage secured by one property located in Honolulu, HI; (i) Bank of Hawaii who is the holder of a mortgage secured by one property located in Honolulu, HI; (j) Green Tree who is the holder of 3 mortgages each secured by a different property; (k) estate of Gerald Larkin, who is the holder of a mortgage secured by one property located in Honolulu, HI; and (l) Tango Juliet Leasing who holds a second mortgage on various properties.

The Debtor does not propose to modify the terms of repayment to its secured creditors except for Tango Juliet Leasing, which has consented to a one-year extension of the maturity date of its loan and a reduction in the interest rate from 16% to 13.5%. The Debtor estimates that there are between $150,000-200,000 in general unsecured claims.

In addition, Timothy Prickett belatedly filed a proof of claim on February 1, 2012, asserting a $1.4 million claim. The Debtor intends to object to this claim. Mr. Prickett claims an interest in the Ewa Beach Road Property

U.S. Bankruptcy Court - Hawaii    #11-00098    Dkt # 335    Filed 02/07/12    Page 5 of 20

B.  **Treatment of Claims and Interest:**

Under the Plan, claims of creditors are classified into thirty (30) categories and the Debtor's equity interest is classified in Class 15. A summary of the classes and treatment are as follows:

| Class | Type of Claim or Interest | Treatment | Entitled to Vote | Projected Recovery Under Plan | Projected Recovery Chapter 7 Liquidation |
|---|---|---|---|---|---|
| 1A | Allowed Ocwen Loan Servicing Secured Claim (445 Kaiolu Street, # 303). | Paid from proceeds of collateral which will be retained and sold through a post-petition Rent to Own Agreement | No | 100% | 100% |
| 1B | Allowed Ocwen Loan Servicing Secured Claim (445 Kaiolu Street, # 505) | Paid from proceeds of collateral which will be retained and sold (through his wholly owned entity Wollstein Rosalei Rentals, LLC) through an Agreement of Sale with Mariolito Asuncion and Filipana Sablan | No | 100% | 100% |
| 1C | Allowed Ocwen Loan Servicing Secured Claim (445 Kaiolu Street, # 604) | Paid from proceeds of collateral which will be retained and sold through a pre-petition Agreement of Sale with Michael Faria who owns the other 50% of the property | No | 100% | 0-100% |
| 1D | Allowed Ocwen Loan Servicing Secured Claim (91-005 Parish Drive) | Paid from proceeds of collateral | No | 100% | 100% |
| 2A | Allowed Chase Bank Secured Claim (445 Kaiolu Street, # 801) | Paid from proceeds of collateral | Yes | 100% | 100% |

6

U.S. Bankruptcy Court - Hawaii    #11-00098    Dkt # 335    Filed 02/07/12    Page 6 of 20

| | | | | | |
|---|---|---|---|---|---|
| 2B | Allowed Chase Bank Secured Claim (444 Niu Street, PH-502) | Property will be retained. Cure and reinstate the mortgage 30 days after the Effective Date or as soon thereafter as is practicable | No | 100% | 100% |
| 2C | Allowed Chase Bank Secured Claim (2421 Ala Wai Boulevard, # 703) | Paid from proceeds of collateral which will be retained and sold through the pending Agreement of Sale with Melvin Kam Hoon Wong and Laverne Kum Chin Wong | No | 100% | 0% |
| 2D | Allowed Chase Bank Secured Claim (725 Piikoi Street, # 207) | Paid from proceeds of collateral | Yes | 100% | 100% |
| 2E | Allowed Chase Bank Secured Claim (second mortgage 3206 Ahinahina Place) | Paid from proceeds of collateral | Yes | 100% | 100% |
| 3A | Allowed Bank of America Secured Claim (445 Kaiolu Street, # 812) | Paid from proceeds of collateral | Yes | 100% | 100% |
| 3B | Allowed Bank of America Secured Claim (3204-A Ahinahina Place) | Paid from proceeds of collateral | Yes | 100% | 100% |
| 3C | Allowed Bank of America Secured Claim (second mortgage 3204-A Ahinahina Place) | Paid from proceeds of collateral | Yes | 100% | 100% |
| 3D | Allowed Bank of America Secured Claim (second mortgage 91-005 Parish Drive) | Paid from proceeds of collateral | No | 100% | 100% |

| | | | | | |
|---|---|---|---|---|---|
| 3E | Allowed Bank of America Secured Claim (55-145 Poohaili Street) | Paid from proceeds of collateral which will be retained and sold through the pending Agreement of Sale | No | 100% | 100% |
| 3F | Allowed Bank of America Secured Claim (2415 Ala Wai Blvd., # 1903) | Paid from proceeds of collateral | Yes | 100% | 100% |
| 4A | Allowed Citizens First Bank Secured Claim (1204 N. Broad Street, Rome, Georgia) | Paid from proceeds of collateral | Yes | 100% | 100% |
| 4B | Allowed Citizens First Bank Secured Claim (1206 N. Broad Street, Rome, Georgia) | Paid from proceeds of collateral | Yes | 100% | 100% |
| 4C | Allowed Citizens First Bank Secured Claim (1208 N. Broad Street, Rome, Georgia) | Paid from proceeds of collateral | Yes | 100% | 100% |
| 5 | Allowed America's Servicing Co. Secured Claim (2421 Ala Wai Boulevard, # 702) | Paid from proceeds of collateral which will be retained to allow the property to be sold through pending Agreement of Sale | No | 100% | 100% |
| 6 | Allowed PNC Secured Claim (444 Niu Street, Apt. No. PH-501) | Retain and cure | Yes | 100% | 100% |
| 7 | Allowed Jerry Doyle Secured Claim (2450 Prince Edward Street #1207A) | Paid from proceeds of collateral or as general unsecured creditor | No | 100% | 100% |

8

| | | | | | |
|---|---|---|---|---|---|
| 8 | Allowed Flagstar Bank Secured Claim (91-449 Ewa Beach Road) | Retain and cure | No | 100% | 100% |
| 9 | Allowed Wells Fargo Bank Secured Claim (3206 Ahinahina Place) | Paid from proceeds of collateral | Yes | 100% | 100% |
| 10 | Allowed Bank of Hawaii Secured Claim (444 Niu Street, PH-504) | Paid from proceeds of collateral | Yes | 100% | 100% |
| 11A | Allowed Green Tree Servicing LLC Secured Claim (second mortgage 445 Kaiolu Street, # 801) | Paid from proceeds of collateral | Yes | 100% | 100% |
| 11B | Allowed Green Tree Servicing LLC Secured Claim (second mortgage 445 Kaiolu Street, # 812) | Paid from proceeds of collateral | Yes | 100% | 100% |
| 12 | Allowed Estate of Gerald Larkin Secured Claim (second mortgage 2415 Ala Wai Boulevard, # 1903) | Paid from proceeds of collateral | Yes | 100% | 100% |
| 13 | Allowed Tango Juliet Leasing LLC Secured Claim (second mortgage on various properties) | Cash payments over time under terms of modified note and from proceeds of sale | Yes | 100% | 100% |

9

| 14 | Allowed Unsecured Claims | Paid in full over time | Yes | 100% | 100% |
| 15 | Equity Interest | Debtor will retain his equity interest | No (deemed to accept) | None | None |

### III. CONFIRMATION REQUIREMENTS ARE SATISFIED.

#### A. The Plan Complies With Applicable Provisions of Bankruptcy Code as Required by Section 1129(a)(1).

The legislative history behind this subsection explains that it is grounded in the requirements of sections 1122 and 1123 of the Bankruptcy Code, governing classification of claims and the contents of a plan. See H.R. Rep. No. 595, 95th Cong. 1st Sess. 412 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 126 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5912, 6368. As demonstrated below, the Plan satisfies all requirements of the confirmation standards set forth in sections 1122 and 1123 of the Bankruptcy Code.

#### B. The Plan Classification System Satisfies Sections 1122 and 1123(a)(1)-(4).

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or interest in a particular class only if such claim or interest is "substantially similar" to the other claims or interests in such class. The Plan contains thirty classes of creditors and one class of interest holders. The claims of (i) the 29 various classes of secured creditors, and that of (ii) general unsecured creditors, are clearly not substantially similar to each other. Finally, the equity interest of the Debtor is substantially dissimilar to those of creditors and warrant separate

10

classification.

The Plan satisfies the requirements of sections 1123(a)(1), 1123(a)(2) and 1123(a)(3) in that it designate classes, specify any class that is not impaired, and specify the treatment of any class that is impaired. *See* Plan at Articles II, III.

Section 1123(a)(4) states that a plan shall "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." The Plan treats all members of each respective Class equally. *See* Plan at Article II.

C.  **The Plan Provides Adequate Means For Implementation.**

Section 1123(a)(5) requires that a plan provide adequate means for its implementation. The Plan provides for the funding of at least $100,000 into the Liquidation Fund of net sale proceeds from certain enumerated properties of the Debtor. *See* Plan at Article IV.

D.  **Section 1123(a)(6) Does Not Apply.**

Section 1123(a)(6) requires that a plan include in the corporate charter of the debtor, if applicable, "a provision prohibiting the issuance of nonvoting equity securities" and the distribution of voting power among classes. This provision does not apply to this individual debtor.

E.  **The Proponent (Debtor) Has Complied With Applicable Provisions of the Bankruptcy Code.**

Section 1129(a)(2) of the Code requires that a plan proponent comply with

11

the applicable provisions of the Bankruptcy Code. *See e.g., Kane v. Johns-Manville Corp.*, 843 F.2d 636, 648 (2d Cir. 1988) (chapter 11 plan complies with applicable provisions of title and could be confirmed notwithstanding technical violations of Bankruptcy Code).

As evidenced by the Court's prior orders and the record in this case, the Debtor has complied with all of the Court's orders, and the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Rules, governing notice, disclosure, solicitation, and all other matters arising in or in connection with this case. Adequate, sufficient, and timely notice of the confirmation hearing and all other hearings was given to all creditors and other parties in interest or parties to whom notice was required.

The Debtor has also properly solicited votes on the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, and has satisfied section 1129(a)(2) of the Bankruptcy Code.

F.   **The Plan Was Proposed in Good Faith.**

Section 1129(a)(3) of the Bankruptcy Code requires that a plan be "proposed in good faith and not by any means forbidden by law." Under Ninth Circuit law, a plan is proposed in good faith when it is intended to achieve a result consistent with the objectives of chapter 11 and in light of the Code's purpose to provide the debtor with a fresh start. *See In re Corey*, 892 F.2d 829, 835 (9th Cir. 1989) (plan

U.S. Bankruptcy Court - Hawaii    #11-00098    Dkt # 335    Filed 02/07/12    Page 12 of 20

proposed in good faith in part because represented fair, well-reasoned effort to end years of litigation surrounding debtors' bankruptcies); *In re Boulders on the River, Inc.*, 164 B.R. 99, 103 (B.A.P. 9th Cir. 1994) (good faith "requires the plan to achieve a result consistent with the objectives and purposes of the Bankruptcy Code"). Good faith in proposing a plan of reorganization is assessed by the Court and viewed under the totality of the circumstances. *See In re Boulders on the River, Inc.*, 164 B.R. at 104.

The Debtor proposed the Plan in good faith, with the legitimate and honest purposes of reorganizing the Debtor's on-going real estate business, while providing for creditors to receive payment in full.

The plan has not been proposed for any purpose prohibited by law. Moreover, as detailed in the liquidation analysis in Article IV of the Disclosure Statement, all creditors will receive at least as much under the Plan as they would have under a chapter 7 liquidation. Accordingly, the Plan is proposed in good faith and the provisions of section 1129(a)(3) have been satisfied.

### G. The Plan Complies With Section 1129(a)(4).

Section 1129(a)(4) of the Bankruptcy Code requires that "[a]ny payment made or to be made by the proponent, by the debtor, or by a person acquiring property under the plan, for services of or costs and expenses in or in connection with the case, or in connection with the plan and the incident to the case, has been approved by, or is subject to the approval of, the court as reasonable." As set forth

13

U.S. Bankruptcy Court - Hawaii #11-00098 Dkt # 335 Filed 02/07/12 Page 13 of 20

in Articles II (Treatment of Administrative Expense and Priority Tax Claims) and IX (Retention of Jurisdiction) of the Plan, all payments for fees and expenses in connection with this case will be subject to approval of this Court. Therefore, the Plan has met the requirement of section 1129(a)(4).

H.  **Disclosures Required Under Section 1129(a)(5).**

Section 1129(a)(5) of the Bankruptcy Code mandates that the plan proponent disclose the identity and affiliations of any known individual proposed to serve, after confirmation of the plan, as an officer or director of the debtor, and further requires the disclosure of the identity of any insider to be employed or retained by the debtor and the nature of compensation to be paid to such insider. The Debtor does not have any officers or directors and does not intend to employ or retain any insider. Accordingly, the subsection is inapplicable.

I.  **No Governmental Rate Approval is Necessary.**

Section 1129(a)(6) of the Bankruptcy Code requires that rates charged by the reorganized debtor be submitted for approval to any governmental regulatory commission having jurisdiction over such rates. Because the Debtor does not operate in an industry where rates are regulated, this subsection is inapplicable.

J.  **The Plan Satisfies the Best Interests Test.**

Section 1129(a)(7)(A) of the Bankruptcy Code requires, with respect to each impaired class, that the holder of each claim or interest has either accepted the plan or will receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or

14

U.S. Bankruptcy Court - Hawaii    #11-00098    Dkt # 335    Filed 02/07/12    Page 14 of 20

retain if the debtor were to be liquidated under chapter 7 of the Bankruptcy Code.

The liquidation analysis in the Disclosure Statement estimates the liquidation value of the Debtor's assets to be approximately $5.9-7.7 million. *See* Disclosure Statement at 58. Consequently, unsecured creditors would likely receive a full recovery in liquidation. *Id.*

K. **The Plan Will Likely Satisfy the Acceptance Test.**

Section 1129(a)(8) requires that each class of claims or interest has accepted a plan or that such class is not impaired under a plan. A class that is not impaired is deemed to have accepted the Plan. The voting deadline is March 2, 2012 and the Debtor anticipates the acceptance of at least one impaired class of creditors. The Debtor requests that the Court find that the treatment of the rejecting class meets the "cram down" requirements for confirmation under section 1129(b) of the Bankruptcy Code, which is discussed below.

L. **Priority Claims are Treated Appropriately.**

Section 1129(a)(9) requires that priority and administrative claims be treated in accordance with that section's provision unless the holder of a priority claim consents to a less favorable treatment. Article II of the Plan provides for treatment of priority and administrative claims in accordance with section 1129(a)(9).

Under the pre-amendment section 1129(a)(9)(C), the Debtor is entitled to considerable discretion in the timing of payments to priority tax creditors. In this case, the Debtor's proposed payments fall well within the parameters of section

1129(a)(9)(C). As noted in *In re Dow Corning Corp.*, 244 B.R. 718 (Bankr. E.D.Mich. 1999):

> The Texas Comptroller's argument that priority tax payments under § 1129(a)(9)(C) must be made monthly or quarterly, as opposed to annually, is without merit. Reorganization plans are routinely confirmed with provisions for such payments on an annual basis and there is nothing in § 1129(a)(9)(C) or anywhere else in the Bankruptcy Code suggesting that this is improper. [citations omitted]. The text of § 1129(a)(9)(C) does not require that payments be made more frequently, . . . and we decline to read such a requirement into the Code.

*Id.* at 719-720.

Because Debtor has proposed payments of a reasonable interval, and there are no proposed deferred balloon payments, the Plan satisfies 1129(a)(9)(C).

M. **Acceptance by at least One Impaired Class.**

Section 1129(a)(10) of the Bankruptcy Code requires that at least one class of impaired claims has accepted the plan, determined without including the acceptance of the plan by any insider holding a claim in such class. The Debtor will be filing its ballot tabulation on March 5, 2012.

N. **The Plan is Feasible.**

Section 1129(a)(11) of the Bankruptcy Code requires that the Court find that confirmation of the plan is not likely to be followed by the liquidation or need for further financial reorganization of the debtor unless such liquidation is provided for in the plan. The feasibility requirement is satisfied by a showing of a "reasonable probability of success." *Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 787 F.2d 1352, 1364 (9th Cir. 1986). "'Success need not be guaranteed . . . . the mere

16

potential for failure of the plan or the prospect of financial uncertainty is insufficient to disprove feasibility.'" In *re Sagewood Manor Associates Limited Partnership*, 223 B.R. 756 (Bankr. D. Nev 1998) (citations omitted).

Through the Plan, the estate should have ample funds to pay holders of ordinary course administrative claims and administrative priority claims.

O. **Payment of Fees and Retiree Benefits.**

Section 1129(a)(12) of the Bankruptcy Code requires that all fees payable pursuant to section 1930 of title 28, as determined by the Court at the confirmation hearing, have been paid or that the plan provide for the payment of all such fees on the effective date of the plan. Article II of the Plan provides that any fees described under 28 U.S.C. § 1930 (which is defined as an Administrative Expense Claim) shall be paid on the Effective Date of the Plan.

Section 1129(a)(13) requires a plan provide for the continuation of retiree benefit payments under a plan. However, the Debtor is not aware of any retiree benefits within the meaning of section 1114 of the Bankruptcy Code for which he is obligated.

P. **The Plan Satisfies the Cram Down Requirement.**

Under section 1129(b) of the Bankruptcy Code, the Court may "cram down" a plan over a rejecting impaired class only if the plan does not discriminate unfairly and is fair and equitable with respect to all Classes.

The Plan does not discriminate among creditors or interest holders. No party

17

U.S. Bankruptcy Court - Hawaii    #11-00098    Dkt # 335    Filed 02/07/12    Page 17 of 20

in interest has suggested any discrimination or gerrymandering on the Debtor's part. As discussed above, there are seven classes under the Plan and no creditor or interest holder is placed in its own class unless clearly justified.

Section 1129(b)(2)(ii) provides that a plan is fair and equitable with respect to a class of interests if holders of interests that are junior to that particular class will not receive or retain any property under the plan on account of such junior interest. While the Plan provides for the Debtor to retain his equity interest under the Plan, it also provides for payment in full of general unsecured creditors in Class 14.

The Debtor submits that the Court should confirm the Plan under section 1129(b) despite the rejection of the Plan by any class.

## IV. CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court enter an order:

    A.    Confirming the Plan; and

    B.    Granting such further relief as the Court may deem just and proper.

DATED: Honolulu, Hawaii, February 7, 2012

/s/ Chuck C. Choi
CHUCK C. CHOI
ALLISON A. ITO
Attorneys for Debtor and
Debtor-in-Possession

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF HAWAII

| In re: | Case No. 11-00098 |
|---|---|
| | (Chapter 11) |
| JOHN DEHART WOLLSTEIN, | |
| | Hearing |
| Debtor and | Date: March 12, 2012 |
| | Time: 10:30 a.m. |
| Debtor-in-Possession | Judge: Hon. Robert J. Faris |

## DECLARATION OF JOHN DEHART WOLLSTEIN IN SUPPORT OF MEMORANDUM IN SUPPORT OF CONFIRMATION OF PLAN OF REORGANIZATION

I, John DeHart Wollstein, if called as a witness in this action, could and would testify competently of my own personal knowledge as follows:

1. I am the Debtor and debtor-in-possession in the above entitled case ("Debtor"). I am competent to make this declaration and do so based on personal knowledge, except as otherwise indicated. I am familiar with, among other things, the general financial affairs and operations of the Debtor and the nature and extent of the Debtor's assets and liabilities, the terms of the existing financing arrangements and security instruments with its various creditors, the Debtor's cash flow and cash requirements to conduct its operations during the pendency of a Chapter 11 case.

2. I make this declaration in support of the Memorandum ("Memorandum") in Support of Confirmation of Plan of Reorganization. Terms used herein and not otherwise defined shall have the meaning ascribed to them in the Memorandum.

3. I have reviewed the Memorandum. All of the factual assertions made in the Memorandum with respect to my case are true and correct to the best of my knowledge, information and belief.

4. I believe that there will be ample funds in the estate to pay the creditors as set forth in the plan..

5. All of my decisions during the course of this case, including those in connection with formulating the Plan, were made with the good faith goal of emerging promptly from this Chapter 11 proceeding.

6. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

DATED: Honolulu, Hawaii, February 7, 2012.

/s/ John DeHart Wollstein
JOHN DEHART WOLLSTEIN